# STATE v. RAYMOND J. SCHAUB.[1]

July 21, 1950.

No. 35,238.

[1]Reported in 44 N. W. (2d) 61.

*J. A. A. Burnquist,* Attorney General, *Ralph A. Stone,* Assistant Attorney General, and *Carl W. Peterson,* County Attorney, for the State.

*Pfau, Pfau & Lamm, Donald C. Steiner,* and *C. A. Johnson,* for defendant.

KNUTSON, JUSTICE.

Defendant was charged by an information of the county attorney of Blue Earth county with commission of the crime of manslaughter in the second degree. He moved for and obtained a bill of particulars. He then demurred to the information and bill of particulars on the ground (1) that the facts stated in the bill of particulars, made a part of the criminal information, did not constitute a public offense; and (2) that the information, a part of which is the bill of particulars, contained certain matters and facts which, if true, would constitute an excuse of the offense charged or other legal bar to the prosecution under the information.

The court overruled the demurrer, but certified the questions hereinafter set forth to this court as important and doubtful. For the purpose of this determination, we must accept the facts set forth in the information and bill of particulars as true. These facts are:

On and prior to December 29, 1949, defendant occupied an apartment in a dwelling house in the city of Mankato. The house was owned by one J. A. Mayer, who, together with his wife, Mamie, occupied other portions of the house. Defendant had been having trouble with his wife and also had financial trouble. On the night of December 28, 1949, after he had been drinking to some extent, he attempted to commit suicide by unscrewing a cap on a gas line and also opening the jets of the gas stove in his apartment. About 1:40 a. m. on December 29, two police officers, in response to a call,

arrived at the building and upon entering defendant's apartment with Mr. Mayer found defendant in the bathroom in a drunken condition. They smelled gas and heard a hissing sound. They entered the kitchen and turned off the jets of the stove. They still heard a hissing sound, and Mr. Mayer was told by the police officers to turn off the gas and open the windows. Defendant was then removed to the police station, where he was confined. After the police had left with defendant, Mr. Mayer replaced the cap on the gas pipe, opened one window, and attempted to open another, but could not do so. He was about to leave the kitchen, but before doing so turned off a light switch, and there immediately followed an explosion, from which Mamie Mayer sustained severe burns, resulting in her death on January 4, 1950. At the time of the explosion defendant had been removed from the apartment by the police officers.

The questions certified to us and the trial court's answers thereto are as follows:

"1. Does manslaughter in the second degree, as set forth under Section 619.18 of the 1945 Minnesota Statutes require that the state prove, beyond a reasonable doubt, that the alleged negligent act of defendant be the natural and proximate cause of the homicide?

"To which question the Court answers: 'Yes.'

"2. Will the act of a third party engaged in a physical action not stimulated by defendant's alleged negligence constitute an intervening cause so as to preclude a finding of proximate causation between defendant's negligence and the ultimate consequence of a series of events?

"To which question the Court answers: 'No.'

"3. Can a man who has exclusive control of a set of circumstances which may be inherently dangerous be held responsible for the end result of his action and the actions of others when his control is interrupted by arrest and involuntary removal by police officers acting within the scope of their authority from the scene in which the circumstances are situated?

"To which question the Court answers: 'Yes.'

"4. Can the want of care on the part of a third person be considered as a factor bearing upon the culpability of the alleged negligent act?

"To which question the Court answers: 'No.'

"5. Can the negligence of others, such as failure to open doors, windows and other external openings to permit gas to escape, and the fact that police officers having the duty to safeguard the lives and properties of others and failing so to do after discovery of a situation possibly dangerous between the time that defendant was taken into custody and the ensuing explosion preclude criminal responsibility on the part of the defendant under statutes relating to culpable negligence?

"To which question the Court answers: 'No.'

"6. Do the circumstances presented by the criminal information, a part of which is the Bill of Particulars, indicate such an intervening cause between defendant's actions and the ensuing explosion which would preclude the defendant from being criminally responsible for the death of Mamie Mayer?

"To which question the Court answers: 'No.'

"7. Can a person be responsible, under all of the circumstances involved in the particular offense charged in this case, when said accused is not present at the time of the ultimate occurrence which caused the death but is in fact either incarcerated or in the custody of duly authorized officers of the Mankato Police Force and had been either incarcerated or in the custody of duly authorized officers of the Mankato Police Force for some time prior to the ultimate occurrence in the City Jail within the city of Mankato, Minnesota?

"To which question the Court answers: 'Yes.' "

The crime of manslaughter in the second degree, with which defendant has been charged, is defined by M. S. A. 619.05, which reads as follows:

"Homicide is the killing of a human being by the act, procurement, or omission of another, and is either (1) murder; (2) manslaughter; (3) excusable homicide; or (4) justifiable homicide,"

and by § 619.18, which, so far as here pertinent, reads:

"Such homicide is manslaughter in the second degree when committed without a design to effect death:

\* \* \* \* \*

"(3) By any act, procurement, or culpable negligence of any person, which, according to the provisions of this chapter, does not constitute the crime of murder in the first or second degree, nor manslaughter in the first degree."

■ Apparently both parties concede that question No. 1 has been correctly answered.

■ While no serious objection is made to the answer to question No. 2, it might be said in passing that the answer is not strictly correct, in that the act of a third party engaged in some physical action not stimulated by defendant's alleged negligence might constitute an intervening cause. Whether defendant's negligence was superseded by such intervening cause, insofar as the action of such third party has been shown by the information and bill of particulars, ordinarily would be a question for the jury when the facts are such that reasonable minds might differ.

■ Question No. 3 raises the proposition which probably is decisive of the others insofar as they affect the charge against defendant. Boiled down to its essentials, defendant, while admitting that he created a dangerous situation and that, had the ignition taken place spontaneously, he would have been responsible for the resulting death of Mrs. Mayer, contends that he was ejected from the premises prior to the force of the ignition and that thereby he lost control over the situation, which deprived him of the opportunity to rectify his wrong before harm had resulted to others. He contends that because of such involuntary removal he should not be held liable for the explosion which occurred after he had lost control of the situation.

As used in our criminal statutes, the words "neglect," "negligence," "negligent," and "negligently" are defined in § 610.02 as "a want of such attention to the nature or probable consequences

of the act or omission as an ordinarily prudent man usually exercises in his own business."

The questions involved here are largely those of proximate cause, and particularly whether the acts of third parties constituted an intervening efficient cause which insulated the act of defendant and became the proximate cause of the death of Mrs. Mayer. In Commonwealth v. Almeida, 362 Pa. 596, 68 A. (2d) 595, there may be found an exhaustive examination of the authorities on the question of proximate cause and its relationship to criminal prosecution. Letner v. State, 156 Tenn. 68, 299 S. W. 1049, 55 A. L. R. 915.

That the original wrongdoer need not be present when the harm occurs, if the result was reasonably foreseeable, is obvious. Haas v. St. Paul Gaslight Co. 113 Minn. 379, 129 N. W. 759; Reichert v. Minnesota Northern Natural Gas Co. 195 Minn. 387, 263 N. W. 297; State v. Cantrell, 220 Minn. 13, 18 N. W. (2d) 681. To sustain a conviction for manslaughter, the act of defendant must have been the proximate cause of the death of Mrs. Mayer without the intervention of an efficient independent force in which defendant did not participate or which he could not reasonably have foreseen.

It is the contention of defendant that the case now before us raises an additional question, namely: When the absence of the original wrongdoer or negligent actor is involuntary because of his confinement by police officers in jail, can he still be held criminally liable if harm results from a situation he created, which he might conceivably have alleviated had he been permitted to remain in control of the premises?

The answer to this question rests largely on a determination of what ought to have been foreseeable to defendant as the probable result of the dangerous situation which he had created. The mere fact that the force which ultimately set off the explosion could not have been foreseen will not relieve defendant of liability if the end result itself was foreseeable.

In Johnson v. Kosmos Portland Cement Co. (6 Cir.) 64 F. (2d) 193, defendant, after having used a barge for oil, failed to clean it out, which resulted in the accumulation of gas in the hold. The

gas exploded when the barge was struck by a bolt of lightning. In holding that the lightning was not an intervening cause, the court said (64 F. [2d] 195):

"* * * We have here, then, no intermediate or intervening efficient cause operating between the wrong and the injury, and so destroying the causal relation of the former to the latter, but rather two concurring causes, neither self-operating, yet together efficient in bringing about the catastrophe here described."

See, Prosser, *The Minnesota Court on Proximate Cause*, 21 Minn. L. Rev. 19, 53.

In Teasdale v. Beacon Oil Co. 266 Mass. 25, 164 N. E. 612, plaintiff was riding in the back seat of an old-fashioned automobile. The automobile was operated by one Barrows, who stopped at a gasoline station to obtain gasoline. The attendant removed the front-seat cover, unscrewed the gasoline tank cap, and inserted the nozzle into the tank. He then went to the pump and gave the handle a quick jerk, which caused the nozzle to flop out of the tank and to spray plaintiff with gasoline. He thereafter completed filling the tank with gasoline, screwed in the cap, replaced the front-seat cover, accepted payment for the gasoline, and went elsewhere on the premises. Barrows went to the front of the car and began to crank it, and as soon as he did so flames burst forth from the automobile, causing plaintiff to be severely burned. Barrows testified that he had had trouble with the ignition that morning and that he had been working on it; that previous to the accident he had removed the cover of the coil box and had left it off; that at any time when the automobile was cranked there was a spark in the coil box; and that if the cover was off the spark was exposed. It was the contention of defendant, owner of the gasoline station, that the negligence of Barrows was an intervening cause which insulated the negligence of the attendant of the gasoline station in spraying plaintiff with gasoline. In holding that this was not tenable, the court said (266 Mass. 27, 164 N. E. 613):

"In an action of this kind the defendant is liable for the natural and probable consequences of his negligent act or omission. 'The injury must be the direct result of the misconduct charged; but it will not be considered too remote if, according to the usual experience of mankind, the result ought to have been apprehended. The act of a third person, intervening and contributing a condition necessary to the injurious effect of the original negligence, will not excuse the first wrongdoer, if such act ought to have been foreseen. The original negligence still remains a culpable and direct cause of the injury.' Lane v. Atlantic Works, 111 Mass. 136, 139, 140. * * * While there is no evidence that the defendant's employee knew that the cover of the coil box had been left off by Barrows, it is a matter of common knowledge that gasoline is highly inflammable and that its contact with a spark is liable to result in serious consequences.

"* * * Even if the accident could not have happened but for the negligence of Barrows, if his act ought reasonably to have been anticipated and guarded against, the act of spilling the gasoline could be found to have caused the accident although the precise manner in which it occurred could not have been foreseen."

See, Ferraro v. Taylor, 197 Minn. 5, 265 N. W. 829.

The instant case involves causal relation between the act of defendant in turning on the gas and the injuries sustained by Mrs. Mayer when the gas exploded. That the original act of defendant in turning on the gas set the stage for the ensuing explosion cannot well be denied, nor is it denied by defendant. Where the situation created by the original actor is the inducing cause of the intervening act, such intervening act will not break the causal connection between the original act and the resulting injury, nor will it absolve the original wrongdoer from liability if in the exercise of reasonable foresight he could have anticipated that the situation might lead to an act likely to result in harm. Liberty Mut. Ins. Co. v. G. N. Ry. Co. 174 Minn. 466, 219 N. W. 755; Restatement, Torts, § 443; Wharton, Homicide (3 ed.) § 27, where the author said:

"* * * one whose wrongful act hastens or accelerates the death of another, or contributes to its cause, is guilty of homicide, though other causes co-operate. And he is guilty if his act was the cause of the cause of death; * * *."

Defendant's action in turning on the gas led to the entry of police officers and to the turning off of the light switch by the owner of the building, which in turn caused the explosion. While defendant might not have foreseen that an explosion would result in exactly that manner, it is common knowledge that gas collected in large quantities is highly explosive and that any spark will cause it to explode, and he could easily have foreseen that others would smell the gas and, upon investigating its origin, would come to harm of some sort. The same thing might have happened while he was physically present. The mere fact that he had been removed did not break the causal connection between the explosive condition which he caused and the explosion itself. Neither does the fact that he might have decided to air out the room before harm came to anyone, had he been left in control of the room, break the causal connection. The simple fact is that he did not rectify the situation which he had created while he was in control. The fact of defendant's involuntary removal would not constitute a defense of itself. It might be considered in determining whether the acts of others constituted an independent intervening cause which superseded the original act of defendant, but it may be considered only in its relation to proximate cause.

■ Question No. 4 obviously is answered correctly. The act of third parties could not affect culpability of defendant's act.

■ The answer to question No. 5 likewise is correct. It involves largely the question of whether contributory negligence of the victim or concurrent negligence of other third parties will preclude a prosecution and conviction of defendant. Contributory negligence of the victim is not a defense in a criminal prosecution. State v. Peterson, 153 Minn. 310, 190 N. W. 345; State v. Kline, 168 Minn. 263, 209 N. W. 881; State v. Bolsinger, 221 Minn. 154, 21 N. W. (2d) 480; Maxon v. State, 177 Wis. 379, 187 N. W. 753, 21 A. L. R. 1484;

Copeland v. State, 154 Tenn. 7, 285 S. W. 565, 49 A. L. R. 605; Letner v. State, 156 Tenn. 68, 76, 299 S. W. 1049, 1051, 55 A. L. R. 915, where the court said:

"'* * * the defendant cannot escape the consequences of his wrongful act by relying upon a supervening cause when such cause naturally resulted from his wrongful act."

Contributory negligence of the victim may be considered only insofar as it tends to show that defendant was not negligent or that his acts did not constitute the proximate cause. State v. Bolsinger, *supra.*

■ Nor is the concurrent negligence of a third party a defense. Where the act of the defendant is of the required degree of culpability and it operates as an efficient proximate cause of death, the defendant is guilty of the crime of involuntary manslaughter under our statute even though someone else's negligence may have concurred. State v. Newberg, 129 Or. 564, 278 P. 568.

Question No. 6 apparently is intended as a catchall which would raise all questions not specifically raised by the foregoing questions. We believe that the answers to questions Nos. 1 to 5 cover substantially the matters raised by question No. 6. The same might be said of question No. 7. All matters raised by question No. 7 have been fully answered under question No. 3.

Except as otherwise indicated herein, the trial court correctly answered the questions certified, and the case is remanded for further proceedings.

So ordered.

Mr. Justice Theodore Christianson, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.