**STATE of Minnesota, Respondent,**

v.

**Bernard Matthew CRACE, Appellant.**

**No. 48969.**

Supreme Court of Minnesota.

July 13, 1979.

Burns, Burns, Rawlings & Burns and Michael O. Burns, St. Cloud, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., and Gary Hansen, Sp. Asst. Atty. Gen., St. Paul, James C. Burseth, County Atty., Milaca, for respondent.

Heard before SHERAN, C. J., and SCOTT and WAHL, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is an appeal from a judgment of the Mille Lacs County District Court wherein a jury found the defendant, Bernard Crace, guilty of second degree manslaughter. We affirm.

On October 23, 1976, Crace and the decedent, Dennis J. Kowalsky, met to go duck hunting. Later that afternoon, Crace mistook Kowalsky for a bear and fatally shot him. The facts surrounding this tragic shooting are relatively undisputed.

Crace and Kowalsky met early in the morning. They intended to spend the day duck hunting at a nearby lake. Upon arriving at the lake, however, they discovered that ice had formed around the shoreline, preventing them from launching their boat. Consequently, they returned to Crace's house to drop off their boat and, while there, each drank a bottle of beer. Thereafter, they spent the remainder of the morning driving around, looking for unfrozen ponds where they could hunt. They were again unsuccessful, and eventually broke for lunch around 1 p. m.

Following lunch, they resumed their pursuit. After leaving the restaurant, they drove to a small meadow at the end of a deserted logging trail. Upon arriving at the meadow they observed bear tracks and decided to spend the remainder of the after-noon bear hunting, notwithstanding the fact that the bear season had closed. First, however, they drove home to exchange their shotguns for high-powered rifles. While there, Kowalsky decided to change his outer clothing, putting on a black Artic Cat snowmobile jacket and a camouflage-type hunting hat. Instead of returning directly to the meadow, they stopped at the Veterans Club for a couple of drinks. They returned to the meadow at approximately 5:30 p. m.

Upon arriving back at the meadow, the two decided to station themselves at separate points and wait for the bear to return. Thus, Crace positioned himself next to a large oak tree at the west end of the meadow and Kowalsky indicated that he would wait next to a large spruce tree approximately 90 yards southeast of the oak. After remaining near the oak tree for 15 to 30 minutes, Crace saw what he thought was a bear moving in willow brush approximately 100 yards across the meadow from him and 80 yards northeast of where Kowalsky had said he would be. Crace described his next actions as follows:

"I was just shooting at the bear. I could barely see it in the willow brush. All I could see was the black object there. I just let one go and it went down and I thought I had myself a bear."

After firing, he ran across the meadow and was shocked to see that he had shot and killed his hunting companion.

Following the shooting Crace was emotionally distraught. He immediately left the scene and drove to a nearby resort, where he called the sheriff. Because the meadow was hard to find, Crace was instructed to meet the sheriff's deputies at a prearranged spot on the highway and lead them to Kowalsky's body. While waiting for the deputies to arrive, Crace consumed an unknown quantity of alcohol. While investigating the scene of the shooting the officers found additional evidence of drinking by both Crace and Kowalsky,[1] but be-

---

1. Officers found a partially-full bottle of pep-permint schnapps and an empty beer can next to Kowalsky's body. They also found an emp-ty beer can where Crace had been when he shot Kowalsky.

cause Crace did not appear to be visibly intoxicated no test was performed to determine the alcohol level in his blood.

Crace was indicted by a grand jury for manslaughter in the second degree. Minn.St. 609.205(2). He did not testify at trial, but instead introduced the statement he had given to the deputy sheriffs two days after the shooting. His entire defense consisted of the testimony of five character witnesses. Following his conviction Crace was placed on 5 years' probation, with the specific provision that he not own or use firearms during that period.

The issues presented are as follows:

(1) Is Minn.St. 609.205(2) unconstitutionally vague and indefinite?

(2) Did the trial court properly instruct the jury as to the elements of manslaughter in the second degree under Minn.St. 609.-205(2)?

(3) Did the trial court err in failing to instruct the jury regarding evidence of defendant's good character?

(4) Did the prosecutor commit prejudicial error by referring in his final argument to defendant's drinking on the day of the shooting?

(5) Should this court adopt contributory negligence as a defense to a criminal prosecution under Minn.St. 609.205(2)?

1. Crace was convicted of second degree manslaughter under Minn.St. 609.205(2). The statute provides that:

"Whoever causes the death of another by any of the following means is guilty of manslaughter in the second degree and may be sentenced to imprisonment for not more than seven years or to payment of a fine of not more than $7,000, or both:

\* \* \* \* \* \*

"(2) By shooting another with a firearm or other dangerous weapon as a result of negligently believing him to be a deer or other animal; or

\* \* \* \* \* \*"

Crace's first claim on this appeal is that the above statute is unconstitutionally vague and indefinite. Although we have not previously addressed ourselves to the constitutionality of this statute, our decision is largely controlled by our discussion in *State v. Hayes*, 244 Minn. 296, 70 N.W.2d 110 (1955).

At issue in *State v. Hayes, supra,* was the constitutionality of Minn.St.1953, § 619.-15(3), the predecessor of the statute now under consideration. As then written, the statute provided, in relevant part, as follows:

"Such homicide is manslaughter in the first degree when committed without a design to effect death:

\* \* \* \* \* \*

"(3) By shooting another with a gun or other firearm when resulting from carelessness in mistaking the person shot for a deer or other animal." Minn.St.1953, § 619.15(3).[2]

*Hayes* demurred to the information, claiming that the phrase "carelessness in mistaking the person shot for a deer or other animal" rendered the statute so vague as to be unconstitutional under the state and federal constitutions. On appeal from the trial court's overruling of the demurrer, this court upheld the constitutionality of the statute. Specifically, we held that the word "carelessness," although not defined in the statute, was synonymous with negligence both under the common law and in general usage, and thus the statute was not vague.

The language of the present statute is only slightly different from that specifically approved in *State v. Hayes, supra.* The only substantive difference is the substitution of the phrase "negligently believing" for the phrase "carelessness in mistaking." In making this change, the legislature in effect enacted the construction given the statute in *State v. Hayes, supra.* Crace, however, argues that in adding the word

---

2. By L.1957, c. 268, the conduct prohibited by Minn.St. 619.15(3) was reduced from first to second degree manslaughter and codified as Minn.St.1961, § 619.18(4). L.1963, c. 753, art. 1, § 609.205 (Criminal Code of 1963), amended Minn.St.1961, § 619.18(4) into its present language and renumbered it as Minn.St. 609.-205(2).

"believing" the legislature rendered the statute unconstitutionally vague.

It is well settled that a statute is unconstitutionally vague and overbroad " * * * when the language employed fails to define the conduct or activities clearly enough to give fair notice of what is prohibited * * * ." *State v. Hipp*, 298 Minn. 81, 85, 213 N.W.2d 610, 613 (1973). Stated alternatively, a penal statute must be sufficiently explicit to enable one of common knowledge to ascertain what conduct is prohibited. *State v. Johnson*, 282 Minn. 153, 158, 163 N.W.2d 750, 753 (1968). See, generally, 1 Torcia, Wharton's Criminal Law, § 11. Here, the statute centers on the phrase "negligently believing." Certainly the term "negligently" gives fair notice of the type of conduct prohibited. See, *State v. Hayes, supra*, 244 Minn. 299, 70 N.W.2d 113. Likewise, the word "believing" is commonly accepted as meaning "thinking." [3] Webster's New International Dictionary (2 ed. unabridged, 1947). Thus, the statute in clear and definite terms makes it a crime to shoot another because the actor negligently thinks or believes the victim is an animal or mistakes him for one. The language of the statute is the substantial equivalent of that expressly sanctioned in *State v. Hayes, supra*. Accordingly, there is no merit to Crace's vagueness claim.

2. Crace next argues that the trial court erred by reading the second degree manslaughter statute to the jury, as opposed to instructing as to the specific elements of the offense. A review of the court's instructions, however, shows that there is no foundation or merit to this claim. Contrary to Crace's representations, the record shows that the trial court took great care to delineate and define each element of the offense. Thus, after reading Minn.St. 609.205(2) to the jury, the court continued as follows:

"Thus, in this case in order to convict, the State must prove beyond reasonable doubt the existence of three essential elements or ingredients; one, it must be clearly and convincingly proved that the victim, Dennis Kowalsky, was in fact killed by a shot fired on this particular day; two, that this death was the direct result of being shot by a firearm in the hands of the defendant, Bernard Matthew Crace; and, three, that the defendant Crace shot Dennis Kowalsky, negligently believing him to be a deer or other animal.

"Now, if in the consideration of all of the testimony in this case you conclude that the victim Kowalsky was in fact killed in the manner that has been reported here in the indictment, if you're convinced beyond reasonable doubt that his death was a direct result of having been shot by a firearm which was in the hands of the defendant, Bernard Crace, then you've got to give careful consideration to the third element of this crime, which is whether or not the defendant committed the act by 'negligently believing that the victim Kowalsky was a deer or other animal.'

"Now, there is no claim that the defendant Crace intentionally or deliberately caused the victim's death, nor is it denied that the defendant thought or believed that he was shooting at a bear. The key words of this last element is whether he was negligent in believing or thinking that he was shooting at a bear, and thus you folks have got to give careful consideration to the meaning of the word 'negligent' and 'negligently believing' as those words are used in this statute.

"In this connection, negligence means simply carelessness. Negligence means

---

**3.** Crace argues that "believe" should be defined with reference to Minn.St. 609.02, subd. 9(1). That statute provides that: "When criminal intent is an element of a crime in this chapter, such intent is indicated by the term 'intentionally,' the phrase 'with intent to,' the phrase 'with intent that,' or some form of the verbs 'know' or 'believe.' "

Clearly, this specific paragraph of the statute does not purport to define the word "believe," nor does it define the word "intent"; rather, the definitions of intent follow in subpart (2)–(4) of § 609.02, subd. 9. Thus, we find no merit to this contention.

the failure to use that degree of care which an ordinary prudent or careful person would use under the circumstances that existed at the time the act was committed.

"The law simply imposes upon every hunter the duty of exercising reasonable care to identify the target or the object to which he is directing his bullet or his shot. A hunter must, therefore, maintain a proper lookout for other hunters that may be within the range of his rifle. He must generally handle his gun in such a manner as that of an ordinary prudent or careful person with regard to the potential hazards then existing. A person who discharges a rifle without exercising the care of a reasonable prudent person in identifying his target may be considered to be negligent, and that is true even though he might be of the belief that he is directing his shot at a deer or other wild animal. If by such conduct and failure to exercise care he effects the death of another person, he may be guilty of manslaughter in the second degree, depending upon your finding on the circumstances and the evidence or the circumstances presented by the evidence in the case."

■ It is well settled that the court's instructions must define the crime charged. *State v. Shore*, 289 Minn. 302, 307, 183 N.W.2d 776, 780 (1971); *State v. Stockton*, 181 Minn. 566, 233 N.W. 307 (1930). In accordance with this, it is desirable for the court to explain the elements of the offense rather than simply reading statutes. See, *State v. Thurston*, 299 Minn. 30, 35, 216 N.W.2d 267, 270 (1974). Here, the trial court fully complied with these requirements. The court separated the offense into its various elements and instructed fully on each.

■ 3. Crace next claims that, by not specifically instructing the jury on the proper use of evidence of good character, the trial court ignored our holding in *State v.*

*Demmings*, 310 Minn. 152, 246 N.W.2d 31 (1976). He concedes, however, that he failed to request such an instruction at trial. In *Demmings*, we held that:

"* * * We believe the trial court, *when requested*, has an obligation in a case such as this to specifically instruct the jury on the proper use of the character evidence." 310 Minn. 155, 246 N.W.2d 34 (emphasis added).

Clearly, *Demmings* required that the defendant must request the court to give a specific instruction regarding the use of character evidence. Since there was no such request we find no impropriety.[4]

■ 4. Crace next contends that the prosecutor committed prejudicial error in his final argument by making various insinuations and references to Crace's drinking on the day of the shooting. We find that this claim has no merit, and hold that the trial court was correct in concluding that the prosecutor's references to drinking were not prejudicial. Read in their entirety, the prosecutor's references to drinking were fair and objective. The only evidence of drinking referred to is that in defendant's own statement and that introduced by the pathologist. The prosecutor was careful to point out that there was no scientific evidence as to the amount of alcohol in defendant's blood, and only asked the jury to determine what effect, if any, this had on his actions.

5. As a final issue, Crace argues that the trial court erred in not instructing the jury that Kowalsky's contributory negligence, if any, would be a defense to a charge of second degree manslaughter. Crace acknowledges that in *State v. Schaub*, 231 Minn. 512, 520, 44 N.W.2d 61, 66 (1950), this court held that, "[c]ontributory negligence of the victim is not a defense in a criminal prosecution," but asks this court to "reconsider" this rule. This argument is wholly untenable.

■ It is well settled that the contributory negligence of the victim is never a defense to a criminal prosecution. E. g.,

---

4. We note that the drafters of the new criminal jury instruction guides (published since our decision in Demmings) recommend that no instruction on the use of evidence of good character be given. 10 Minnesota Practice, Crim.Jig 3.18, 31 (1977).

*State v. Schaub, supra; Wren v. State*, 577 P.2d 235 (Alaska 1978); *Hart v. State*, 75 Wis.2d 371, 249 N.W.2d 810 (1977). See, generally, Perkins, Criminal Law, 971–73; 22 C.J.S., Criminal Law, § 52. It is equally well settled, however, that the victim's negligence is relevant on the questions of whether the defendant was negligent, and, if so, whether that negligence was the proximate cause of the victim's injury. *State v. Schaub, supra*; Perkins, Criminal Law, 972; 1 Torcia, Wharton's Criminal Law, § 47. Here, the trial court instructed the jury wholly in conformity with these established rules of law.[5] The jury had before it evidence from which it could have found Kowalsky negligent,[6] but nonetheless determined that Crace was negligent and that his negligence was a proximate cause of the death.

Affirmed.

**5.** For example, at one point in the instructions the court succinctly summarized these general rules as follows: "The negligence on the part of the victim—this is not a defense in a criminal case, however, in considering whether or not the defendant exercised the care of a reasonably prudent hunter or failed to exercise such care the jury may take into consideration the conduct of the victim and all of the other circumstances that existed at the time the accident occurred. In other words, if there was any negligence on the part of the victim, this can be considered by you only insofar as it tends to show that the defendant was not himself negligent or that his acts did not constitute the proximate cause of the accident."

**6.** For example, the record shows that he was dressed in a black jacket, was intoxicated, and was far from the spot where he was supposed to be.