STATE of Minnesota, Respondent,

v.

**Mildred Brandy KING, a.k.a. Mildred Euphame King, Appellant.**

No. C3–84–1345.

Court of Appeals of Minnesota.

May 14, 1985.

Hubert H. Humphrey, III, State Atty. Gen., James B. Early, Sp. Asst. Atty. Gen., St. Paul, Julius Gernes, Winona Co. Atty., Winona, for respondent.

C. Paul Jones, State Public Defender, Jonathan G. Steinberg, Asst. Public Defender, Minneapolis, for appellant.

Heard, considered and decided by POPOVICH, C.J., and SEDGWICK and RANDALL, JJ.

## OPINION

SEDGWICK, Judge.

Appellant Mildred King was convicted of manslaughter in the second degree Minn. Stat. § 609.205(1) (1982) for fatally stabbing her husband with a butcher knife. She raises a number of issues on appeal including evidentiary rulings, jury instructions, prosecution's improper closing argu-

ment, sufficiency of evidence and sentencing. We affirm.

## FACTS

The victim in this case was Richard King, age 53. King met appellant in 1979. Their relationship was stormy because of heavy drinking. On one occasion appellant held a knife to King's throat and scratched him. On August 19, 1983 they were married. During the four week marriage, King rarely stayed with appellant.

Around noon on September 15, 1983 King, appellant, appellant's four year old daughter, and two friends went out drinking. Appellant left to go shopping while King, who was intoxicated, remained at a bar. When King later went to appellant's house, an argument ensued while appellant was using a butcher knife to prepare dinner. According to appellant, King pushed her and grabbed her hand which held the knife. The pushing back and forth continued and King was stabbed in the chest.

King left the house, leaving behind blood on the knife, the kitchen table, a bun bag, and the front door. A few blocks from appellant's house King's car went out of control and he hit a parked car. He died shortly thereafter. The cause of death was the stab wound to his chest which caused his left lung to collapse.

The autopsy report indicated the direction of the stab wound was downward with enough force to break a rib and protrude four to five inches into his body. Test results showed that King's blood alcohol content was .17.

Appellant told police that she held the knife in a "buttering" position rather than a "stabbing" position. She claimed she never knew King had been cut until he showed her some blood. At trial she testified she wasn't aware of the knife and didn't know when King was stabbed.

Appellant was convicted of manslaughter in the second degree and sentenced to 41 months imprisonment.

## ISSUES

1. Did the trial court err in admitting evidence of the September 11, 1983 incident?

2. Did the trial court err in excluding certain statements as hearsay?

3. Did the trial court err in failing to instruct the jury on superseding cause?

4. Did the prosecutor commit misconduct in closing argument?

5. Was the evidence sufficient?

6. Did the trial court err in refusing to depart downward from the presumptive Minnesota Sentencing Guidelines sentence?

## ANALYSIS

### I.

■ Appellant contends the trial court erred in admitting evidence of a prior occasion where she held a knife to King's throat and scratched him. This evidence was relevant to develop the strained relationship between appellant and the victim. *See State v. Williams*, 361 N.W.2d 473 (Minn.Ct.App.1985). The Supreme Court said in *State v. Blanchard*, 315 N.W.2d 427, 431 (Minn.1982) "[e]vidence pertaining to the relationship between a defendant and the homicide victim is ordinarily admissible in criminal prosecutions, regardless of its reference to another crime. *State v. Salas*, 306 N.W.2d 832 (Minn.1981); *State v. Diamond*, 308 Minn. 444, 241 N.W.2d 95 (1976) (per curiam)."

The trial court at pretrial ruled: that the State was not required, pursuant to Minn. R.Civ.P. 7.02, to notice this incident as "other crimes evidence." *State v. Boyce*, 284 Minn. 242, 170 N.W.2d 104 (1969); that the State was obligated to comply with defendant's discovery demand pursuant to Rule 9. *State v. Arndt*, 264 N.W.2d 637 (Minn.1978); and that the State's letter dated November 7, 1983, acknowledged by defendant, satisfied the discovery demand.

■ The court's finding that evidence of a prior incident where appellant held a knife to the victim's throat was clear and

convincing is supported by the record. *State v. Link,* 289 N.W.2d 102 (Minn.1979).

## II.

Appellant contends the trial court erred in excluding numerous statements of appellant as hearsay. Appellant attempted to introduce, through four witnesses, her own statements that she was abused by King and was having marital difficulties.

1. Appellant cites Minn.R.Evid. 801(d)(1)(B) which provides:

**(d) Statements which are not hearsay.** A statement is not hearsay if—

(1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, * * *.

This rule is inapplicable because at the time the disputed testimony was offered appellant (the declarant) had not testified and it was uncertain whether she was going to testify. The proffered testimony was not prior consistent statement by appellant; it was merely an attempt to offer appellant's testimony without her having to testify.

2. Appellant claims that even if the statements were hearsay it was admissible under the "state of mind" exception to hearsay, Minn.R.Evid. 803(3). The disputed testimony was not offered to show a state of mind, emotion, sensation or physical condition; it was offered to establish that King had abused her in the past without her having to testify.

## III.

Appellant contends that the trial court erred in failing to instruct the jury on the concept of "superseding cause" CIV. JIG. II, 142 G–S. Appellant requested the instructions so that she could argue that she is not criminally responsible for King's death because of his negligence in being drunk which kept him from securing prompt medical attention to save his life. This is a civil instruction, used only in non-intentional tort cases. It has no application in criminal law. "[I]t is well settled that the contributory negligence of the victim is never a defense to a criminal prosecution." *State v. Crace,* 289 N.W.2d 54, 59 (Minn.1979). *See State v. Munnell,* 344 N.W.2d 883, 887–8 (Minn.Ct.App.1984); *Hart v. State,* 75 Wis.2d 371, 249 N.W.2d 810, 822 (1977). *See also* 22 C.J.S., *Criminal Law* § 52 (1961 and 1984 Supp.).

In a homicide case,

*"One who inflicts an injury on another is deemed by the law to be guilty of homicide if the injury contributes mediately or immediately to the death of such other.* The fact that other causes contribute to the death does not relieve the actor of responsibility. So the physical condition of the slain man at the time when the act was done, will not excuse or minimize its consequences, if the causal connection between it and the fact of death is made to appear."

\*        \*        \*        \*        \*        \*

It is immaterial that defendant did not know that the deceased was suffering from a condition which facilitated the killing and that he did not reasonably anticipate that his act would cause death. * * *

*State v. Smith,* 264 Minn. 307, 119 N.W.2d 838, 847–48 (1962), quoting *State v. Francis,* 152 S.C. 17, 59, 149 S.E. 348, 363 (1929).

The trial court properly instructed the jury that the victim's negligence is relevant on the question of whether appellant was negligent. *See Crace,* 289 N.W.2d at 60.

## IV.

Appellant claims the prosecutor misstated the law in closing argument. This contention is without merit. Appellant is nitpicking and reading a portion of the argument out of context, as the following demonstrates:

Now, getting into the actual elements of manslaughter in the second degree, the

State is required to establish that Mildred King caused the death of Richard King by her culpable negligence. Again the Court will explain what that phrase means to you, whereby she creates an unreasonable risk and consciously takes the chance of causing death or great bodily harm. Now what would happen just for argument sake if I asked you to simply disregard all the evidence that the State has produced, disregard the doctor's testimony, disregard the autopsy results, approach this case as though the Defendant's version, the version that she gave the police is the gospel truth. Even if you ignore all the State's evidence and you accept as the gospel truth the Defendant's version of what happened, what you still have is a bare minimum in this case is manslaughter in the second degree. The version that Mildred King gave to police two hours after Richard King was pronounced dead establishes, according to her, that the stabbing was an accident. That's what manslaughter in the second degree is, you are assuming that the killing was accidental.

MR. RICHARDS: Your Honor, I would object to that and ask for a curative instruction on the laws to that point.

THE COURT: I will consider that at the conclusion of the argument, Mr. Richards.

Go ahead, Mr. Pendleton.

MR. PENDLETON: And Mildred King's version, the version she gave police clearly establishes that even though the stabbing may have been accidental she took an unreasonable risk and she consciously took a chance of causing death or great bodily harm to Richard King. The question we have to ask then is what is the unreasonable risk she took? How did she consciously take a chance of inflicting death or great bodily harm?

It is clear that the objection by defense counsel was premature. When the prosecutor completed the entire argument defense counsel did not request a curative instruction, presumably because there was nothing to cure. *See State v. Marquetti,* 322 N.W.2d 316, 318 (Minn.1982). In its discretion, the trial court did not deem the argument required curative instructions. *State v. Stufflebean,* 329 N.W.2d 314, 318–19 (Minn.1983).

**V.**

Appellant claims the evidence was insufficient to sustain her conviction for manslaughter in the second degree. This offense is defined in Minn.Stat. § 609.-205(1) (1982) as

Whoever causes the death of another by any of the following means is guilty of manslaughter in the second degree * * * (1) By his culpable negligence whereby he creates an unreasonable risk, and consciously takes chances of causing death or great bodily harm to another.

Under this statute the State must establish that appellant acted with gross negligence (objective test) and acted in conscious disregard of the risk created by her conduct (subjective test). *State v. Frost,* 342 N.W.2d 317 (Minn.1983).

Using well established principles of appellate review, *see State v. Turnipseed,* 297 N.W.2d 308, 313 (Minn.1980), the jury could easily infer from the evidence that appellant created an unreasonable risk and was aware of the risk created by her conduct in thrusting a butcher knife in close proximity into Richard King's chest.

**VI.**

Appellant was sentenced to the presumptive guideline sentence of 41 months imprisonment. Her contention that the trial court abused its discretion in refusing to depart downward is without merit. The presumptive sentence will generally not be disturbed on appeal. *State v. Kindem,* 313 N.W.2d 6 (Minn.1981). Appellant's contention that she was not the aggressor in the incident was not clear from the evidence.

**DECISION**

Appellant's evidentiary, jury instructions and closing argument contentions are with-

out merit. The evidence was sufficient to convict appellant of manslaughter in the second degree and there was no error in sentencing her to the presumptive sentence of 41 months.

Affirmed.