**STATE of Minnesota, Respondent,**

v.

**Roger Gilchrist HEDSTROM, Appellant.**

No. C9–87–1655.

Court of Appeals of Minnesota.

July 19, 1988.

Hubert H. Humphrey III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Lisa A. Berg, Asst. Co. Atty., Minneapolis, for respondent.

Randall D.B. Tigue, Minneapolis, for appellant.

Considered and decided by WOZNIAK, C.J., and SHORT and THOREEN,* JJ., without oral argument.

## OPINION

WOZNIAK, Chief Judge.

Appellant Roger Hedstrom was convicted of one count of theft by swindle over $2,500 in violation of Minn.Stat. § 609.52, subd. 2(4) (1986), and of one count of perjury in violation of Minn.Stat. § 609.48, subd. 1(2) (1986). On appeal, Hedstrom claims that misrepresentations on a sworn construction statement do not form a legal basis for perjury, that the trial court abused its discretion in refusing to allow

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

the introduction of evidence in a parallel civil proceeding, and that the court erred in sentencing him on the two convictions. We affirm in part and reverse in part.

## FACTS

Sayed and Zakia Abdelwahed moved to the United States from Egypt in 1977. Both are employed at the University of Minnesota. In addition to their home in Minneapolis, the Abdelwaheds own and rent out five other houses in Minneapolis.

Sayed first contacted appellant Roger Hedstrom in September 1985 when he needed electrical work done on their home. Hedstrom subsequently estimated and performed electrical work at the Abdelwaheds' rental property.

In late 1985, the Abdelwaheds' application for FHA refinancing on one of their rental properties was denied because of structural defects in the front porch. Hedstrom and the Abdelwaheds contracted to repair the porch and work on other items such as electric wiring, plumbing, painting, carpet repair, roof repair, glass repair, furnace repair, and appliance installation. Costs totaled $14,143, with an agreement to pay Hedstrom upon receipt of the funds at the time the home was refinanced. However, the Abdelwaheds testified that Hedstrom began asking for payments early, and that they paid him in full through various installments prior to obtaining the FHA loan.

The Abdelwaheds testified that they initially paid Hedstrom by check, but he subsequently demanded cash payments. They submitted a record of payments kept by Zakia indicating cash payments which ranged from $1,200 to $5,000 which were disbursed from January 15 to March 8, 1986. Sayed sought to ensure receipt of the $14,000 once refinancing on the home was completed, and had Hedstrom execute a promissory note for the $14,000.

Hedstrom informed the Abdelwaheds that the work on the rental property was completed, and the FHA approved the loan after inspecting the work on the porch. A number of Minneapolis city inspectors testified that there was no evidence of recent plumbing, heating, or electrical work on the property. The porch reconstruction, originally estimated to cost over $4,000, was only patched-up at a cost of $150. Hedstrom admitted that all the repairs listed on the original estimate and sworn construction statement were not completed.

The Abdelwaheds testified that Hedstrom agreed to attend the closing and sign over the $14,143 check which was made payable to him for the repairs. Hedstrom failed to appear at the closing. However, he visited the loan company's office later that day, executed a lien waiver, executed a sworn construction statement verifying that all the work on the property had been completed, and took the $14,143 check and deposited it in his own account.

The Abdelwaheds repeatedly attempted to contact Hedstrom in the days following the closing. When Hedstrom finally was contacted, he wrote Sayed a check for $7,000, claiming the check he received had not cleared. Hedstrom's check was returned due to insufficient funds; after a second submission, it was returned with payment stopped.

In July 1986, the parties entered an agreement in which Hedstrom acknowledged a $10,000 debt to the Abdelwaheds, agreed to make $2,000 monthly payments, and agreed to provide an additional $4,000 payment at the end of the week. The agreement failed to mention any previous debts owed by the Abdelwaheds to Hedstrom for prior electrical work, carpeting, or a typewriter. Hedstrom never made any of the agreed payments, resulting in subsequent civil and criminal proceedings.

Hedstrom testified to an entirely different set of facts. He testified that when the $14,000 contract proposal was drafted, the Abdelwaheds already owed him for over $3,000 in electrical work, carpeting furnished at the five rental properties, and an IBM Arabic typewriter. Sayed then advised Hedstrom that if he could prepare the statement covering the necessary repairs to the rental property, Sayed could obtain the FHA loan, and then Hedstrom could refund the Abdelwaheds the loan balance

after subtracting their debt. He testified that the parties never intended to complete all the repairs on the list, but that he did complete the electrical work. Further, Sayed approved the patch-job on the porch because he did not want to pay for the $4,396 reconstruction.

Hedstrom denied ever receiving cash payments, or any payments under the $14,000 contract. He noted that the Abdelwaheds would have required receipts for tax purposes, as they had done in the past. The promissory note was given only to assure the Abdelwaheds that he would return a portion of their money following the closing.

He stopped payment on the $7,000 check because Sayed demanded that he return more than $7,000. He testified that he later agreed to return $10,000 if they would pay for the carpeting and typewriter. The Abdelwaheds refused this proposed arrangement and initiated civil proceedings.

Hedstrom was charged with theft by swindle over $2,500, perjury, and contracting without a license. Following a jury trial, Hedstrom was convicted of theft by swindle and perjury. He was sentenced to 15 months imprisonment for theft by swindle, and one year and one day for perjury, with both sentences stayed for five years. Hedstrom was ordered to serve 90 days in the Hennepin County adult correction facility, and ordered to pay restitution as determined in the civil action.

### ISSUES

1. Was the sworn construction statement "required or authorized by law to be under oath" within the meaning of Minn. Stat. § 609.48, subd. 1(2)?

2. Did the trial court abuse its discretion in limiting the admission of evidence regarding the parallel civil proceeding?

### ANALYSIS

1. An individual is guilty of perjury if a false material statement is made with knowledge of its falsity "[i]n any writing which is required or authorized by law to be under oath or affirmation." Minn.Stat. § 609.48, subd. 1(2).

> [P]erjury cannot be assigned upon an oath not authorized or required by law. * * * [T]he oath must be one administered pursuant to, or as required or authorized by, some law, and * * * a merely gratuitous oath cannot be said to be lawfully administered, within the meaning of the statute defining perjury.

*State v. Larson*, 171 Minn. 246, 249, 213 N.W. 900, 901 (1927) (citations omitted). Hedstrom admitted that some of the work listed on the sworn construction statement was not completed. The statement was accompanied by a lien waiver and was both signed and notarized.

The state claims the sworn construction statement is authorized by law, in pertinent part, as follows:

> Any affidavit relating to the identification * * * of any person who is a party to any instrument affecting the title to real estate, or an affidavit relating to the identification of any corporation or other legal entity which is a party to any instrument affecting the title to real estate, *duly sworn to before any officer or person authorized to administer an oath under the laws of this state*, shall be recordable in the office of the county recorder where such instrument is recorded.
>
> Any such affidavit so recorded * * * is admissible as evidence in any action involving the instrument to which it relates or the title to the real estate affected by such instrument and is prima facie evidence of the facts stated therein.

Minn.Stat. § 507.29 (emphasis added). In an early mechanic's lien action, the Minnesota Supreme Court ruled that a notary public has authority to administer an oath in the authentication of documents. *Wood v. St. Paul City Ry. Co.*, 42 Minn. 411, 414, 44 N.W. 308, 309 (1890).

Minn.Stat. § 507.29 mandates that affidavits of parties with an interest affecting the title to property must be "duly sworn to" under oath before they *may* be recorded. The statute sets the parameters for recording and use of the document as evi-

dence in an action relating to title to real estate. Failure to execute the document under oath merely means it is not recordable, and thus under the statute it is not admissible in an action regarding title to the property.

The statute does not establish a blanket proposition that all sworn construction statements be under oath. The context in which an oath is required under the statute relates only to the recording and admissibility of the documents in a private action to determine a party's interest in the property. In fact, the construction statement language demonstrates the private nature of the document as follows:

> That this statement is made to Northwestern National Bank of Minneapolis for the purpose of procuring * * * financing during the construction period in accordance with the construction loan agreement executed in connection therewith and is part thereof by reference.

In addition, the document which would affect the "title to real estate" under Minn. Stat. § 507.29 is a mechanic's lien statement, or in this case the mechanic's lien waiver. The testimony of the loan closer indicated that neither the mechanic's lien waiver nor the sworn construction statement were documents which were regularly recorded. Even if they were recorded, the lien waiver, not the construction statement, is the document which would bar the assertion of the lien and negate any cloud on the title to the real estate.

We refuse to interpret Minn.Stat. § 597.29 as "requiring" the construction statement to be executed under oath for purposes of upholding a criminal conviction for perjury. Although Minn.Stat. § 507.29 is not a penal statute, by analogy we note that such statutes must be sufficiently explicit to enable one of common knowledge to ascertain what conduct is prohibited. *State v. Crace,* 289 N.W.2d 54, 58 (Minn. 1979). We find the statutory language insufficient to form the basis for an oath "required or authorized by law" under Minn.Stat. § 609.48, subd. 1(2).

■ 2. Decisions on the admissibility of evidence rest within the sound discretion of the trial court, and will be upheld unless there is a clear abuse of discretion. *State v. Ture,* 353 N.W.2d 502, 515 (Minn.1984). Hedstrom claims the trial court erred when it limited the introduction of evidence concerning discovery requests in the parallel civil proceeding.

Hedstrom sought to demonstrate that the Abdelwaheds purposely failed to disclose their records concerning the cash payments in the civil proceeding, despite his repeated formal discovery requests. He sought to impeach the Abdelwaheds' claim that there were cash payments, and impeach the testimony that a request for the record of the payments in the civil proceeding never was received. He asserts that the trial court erred in finding the evidence irrelevant, and that this case falls outside of the standard rule that a witness who takes the stand does not place his or her credibility in issue. *See State v. Hawkins,* 260 N.W.2d 150, 158 (Minn.1977).

The record demonstrates, however, that following the trial court's initial decision to limit admission of evidence from the civil proceeding, the court admitted into evidence the two requests for production of documents as well as the notice of the taking of Sayed Abdelwahed's deposition. Hedstrom's counsel questioned the Abdelwaheds regarding the source of the cash payments and the record of those payments. The court further allowed Hedstrom's counsel to cross-examine Sayed extensively on his failure to produce the record of cash payments during discovery in the civil proceeding, even though the court initially deemed the evidence irrelevant.

Hedstrom thus had the opportunity to attack both of the Abdelwaheds' credibility and admit evidence and testimony regarding the civil proceeding. Given the testimony and evidence admitted, Hedstrom suffered no significant prejudice and any alleged trial court error was harmless. The trial court did not abuse its discretion in limiting the admission of evidence relating to the civil proceeding.

Because the perjury conviction is vacated, it is unnecessary to rule whether the trial court abused its discretion in sentencing Hedstrom for both the theft and perjury convictions.

## DECISION

The perjury conviction is vacated. The trial court did not abuse its discretion in limiting the admission of evidence regarding the parallel civil proceeding.

Affirmed in part and reversed in part.