STATE of Minnesota, Respondent (C4–90–1668), Appellant (C0–90–1991),

v.

Justin L. BAUER, Appellant (C4–90–1668), Respondent (C0–90–1991).

Nos. C4–90–1668, C0–90–1991.

Court of Appeals of Minnesota.

May 21, 1991.

Review Denied July 24, 1991.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis County Atty. and James B. Florey, Asst. County Atty., Virginia, for the State.

J. Carver Richards, III and Gordon C. Pineo, Virginia, for Justin L. Bauer.

Corey J. Ayling, McGrann, Shea, Franzen Carnival, Straughn & Lamb, Chtd. and Deborah M. Gilman, Minnesota Civ. Liberties Union, Minneapolis, for amicus Minnesota Civ. Liberties Union.

Considered and decided by KALITOWSKI, P.J., and SHORT and SCHULTZ *, JJ.

## OPINION

SHORT, Judge.

In these consolidated appeals, Justin Bauer challenges his conviction for aiding a suicide and his conviction and sentence for fetal (felony) homicide. The state challenges the downward departure on the homicide sentence. We affirm.

## FACTS

Eighteen-year-old Rachelle Cazin died of a single gunshot wound to the head. Justin Bauer, then 17, was with Cazin when she died. At the time of her death, Cazin was pregnant with a six to six-and-one-half month old fetus. Bauer did not deny paternity, but testified he did not believe Cazin was pregnant. There was testimony at trial that Bauer made threats against Cazin because she was spreading rumors she was pregnant with his child. Bauer admitted he was angry with Cazin.

On April 9, Cazin asked Bauer to meet her in the woods near their home and to bring his gun. The couple met as planned and agreed to commit suicide together. Bauer testified Cazin put the gun in her mouth and he counted to three, but nothing happened. Bauer claims he then tried to talk Cazin out of shooting herself. As he walked away from her, he heard a gunshot. Bauer hid Cazin's body under a layer of brush, ran home, changed his clothes, unloaded the gun, threw the remaining shells outside and cleaned the gun.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

That evening, a priest in Mountain Iron, received an anonymous call. The caller said his girlfriend had committed suicide after he backed out of the suicide pact. He admitted to the priest that he had hidden the girl's body and was afraid no one would believe him. When police associated this call with Cazin's disappearance, they obtained a search warrant for Bauer's home. At first, Bauer told them Cazin had not shown up for the arranged meeting. When confronted with the call to the priest, Bauer admitted his involvement. He showed them the rifle in his bedroom, and led them to the scene where Cazin's body was located.

The jury found Bauer not guilty of second degree (intentional) murder and fetal homicide. He was found guilty of aiding a suicide and of felony fetal homicide. Six weeks after the trial, one of the jurors wrote a letter to Bauer, expressing her feeling that Bauer was not guilty of the felony fetal homicide charge. The trial court denied Bauer's motion for a post-trial examination. Pursuant to *Schwartz v. Minneapolis Suburban Bus Co.*, 258 Minn. 325, 328, 104 N.W.2d 301, 303 (1960).

The trial court gave notice of its intent to consider a downward durational departure on the felony fetal homicide conviction. The state opposed the departure, and argued for consecutive sentencing. The trial court sentenced Bauer to concurrent sentences of 24 months for aiding a suicide and 60 months for felony fetal homicide, approximately a 50 percent downward durational departure.

## ISSUES

I. Do the fetal homicide statutes violate the establishment clause?

II. Was there sufficient evidence to satisfy the statutory elements of both offenses?

III. Are the verdicts legally inconsistent?

IV. Did the trial court abuse its discretion in denying a *Schwartz* hearing?

V. Was the 60-month sentence for felony fetal homicide an unwarranted downward departure or cruel and unusual punishment?

## ANALYSIS

### I.

Bauer concedes a number of constitutional challenges to the fetal homicide statutes were rejected in *State v. Merrill*, 450 N.W.2d 318 (Minn.1990), *cert. denied*, — U.S. —, 110 S.Ct. 2633, 110 L.Ed.2d 653 (1990). However, he argues the statutes violate the establishment clause of the first amendment, an argument not raised in *Merrill*.

In order to survive an establishment clause challenge, a statute: (1) must have a secular legislative purpose; (2) must have a principal or primary effect which neither advances nor inhibits religion; and (3) must not foster excessive government entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). Bauer's argument focuses on the first factor, the asserted absence of any secular purpose.

The fetal homicide statutes were enacted, as the supreme court surmised in *Merrill*, 450 N.W.2d at 324, in response to a 1985 case in which the supreme court adhered to the common law meaning of "human being," as used in Minnesota's homicide statutes, and declined to extend those laws to feticide. *See State v. Soto*, 378 N.W.2d 625, 630 (Minn.1985). The purpose of the fetal homicide statutes, therefore, is to rectify a perceived gap in the criminal code. That this is a secular purpose seems clear from a reading of Justice Steven's dissent in *Webster v. Reproductive Health Servs.*, 492 U.S. 490, — — —, 109 S.Ct. 3040, 3082–85, 106 L.Ed.2d 410 (1989), comparing a Missouri statutory preamble that life begins at conception to amendments to "tort, property, and criminal laws." As our supreme court implicitly recognized in *Merrill* and *Soto*, the state has the ability to criminalize behavior affecting unborn children.

The imposition of criminal liability is generally a secular matter, and prohibiting the termination of a pregnancy was not neces-

sarily done to serve a religious purpose. Moreover, a law may satisfy the "secular purpose" test even though it may be motivated in part by a religious purpose. *See Wallace v. Jaffree,* 472 U.S. 38, 56, 105 S.Ct. 2479, 2489, 86 L.Ed.2d 29 (1985). Bauer has not shown that the severity of the Minnesota statutes, noted in *Merrill,* 450 N.W.2d at 321, infects its purpose, making it non-secular in intent.

## II.

■ A person is guilty of aiding a suicide if that person "intentionally advises, encourages, or assists another in taking the other's own life." Minn.Stat. § 609.-215, subd. 1 (1988). The statute is similar to the accomplice liability statute, which provides that an accomplice may escape criminal liability if he "abandons [the criminal] purpose and makes a reasonable effort to prevent the commission of the crime prior to its commission." Minn.Stat. § 609.05, subd. 3 (1988). The statute requires more than a subjective abandonment of purpose.

Bauer argues there was sufficient evidence to show he abandoned his participation in Cazin's suicide. We disagree. While Bauer testified he tried to persuade Cazin not to shoot herself and initiated an attempt to get the gun away from her, there was contradictory evidence. We cannot retry the facts and it is the exclusive function of the jury to weigh the credibility of witnesses. *See State v. Bias,* 419 N.W.2d 480, 484 (Minn.1988). The record demonstrates (a) hours before Cazin's death, Bauer threatened to kill Cazin with his gun, (b) Cazin told a school counselor and nurse that she feared Bauer might harm her, (c) Bauer supplied the gun and ammunition, (d) Bauer loaded the gun, (e) Bauer told a priest that he planned the suicide pact, (f) Bauer hid the body, and (g) Bauer told conflicting stories about the day's events when confronted by relatives and the police. When this evidence is viewed in a light most favorable to the jury's verdict, there is sufficient evidence to support the verdict on aiding a suicide.

■ Bauer also challenges the state's proof of causation on the fetal homicide offense. Bauer was convicted of

> caus[ing] the death of an unborn child, without intent to effect the death of any unborn child or person, while committing or attempting to commit a felony offense.

Minn.Stat. § 609.2662(2) (1988). Expert testimony established that the fetus died from asphyxiation caused by cessation of blood flow from its mother. This death was certainly a foreseeable consequence of her suicide. Although Bauer testified he did not know Cazin was pregnant, there was much evidence from which the jury could have inferred otherwise. Nor are we persuaded Cazin's decision to commit suicide was an intervening independent force. In *State v. Schaub,* 231 Minn. 512, 517, 44 N.W.2d 61, 64 (1950), the court held a manslaughter conviction could be upheld if the defendant's act was the "proximate cause [of death] without the intervention of an efficient independent force in which defendant did not participate or which he could not reasonably have foreseen." Cazin's suicide was not an "intervening cause," as Bauer argues, because he participated in it and could reasonably have foreseen it. *See id.* at 517, 44 N.W.2d at 64. An accomplice can be guilty of felony murder even though his accomplice commits an intentional act which more proximately causes the death. *See State v. Combs,* 292 Minn. 317, 318–21, 195 N.W.2d 176, 177–79 (1972) (accomplice in armed robbery was guilty of felony murder although the other robber fired the fatal shot).

■ The amicus Minnesota Civil Liberties Union argues the legislative exemption of the mother from fetal homicide liability bars Bauer's conviction. However, the mother is exempted from criminal liability by a statutory exemption no broader than its express terms. The fetal homicide statutes exclude the pregnant woman from liability. Minn.Stat. § 609.266(b) (1988). However, the rationale of that exclusion is to exclude abortion from the statutes and not to justify the *suicide* of the pregnant woman or to bar liability of the woman's accomplice if she succeeds.

A "justification" negates a criminal offense because it excuses the criminality of the act. *See, e.g., State v. Boyce*, 284 Minn. 242, 255–60, 170 N.W.2d 104, 112–15 (1969). Suicide was a common law crime in England, but as a policy matter and for practical reasons is not criminalized in most states. *See* 2 W. LaFave & A. Scott, *Substantive Criminal Law* § 7.8 (1986). However, the absence of deterrent effect against the suicide, whether successful or unsuccessful, has not prevented the criminalization of assisting suicide. The act is not a "justifiable" taking of life such that a justification defense extends to the suicide's accomplice. Although Cazin could not have been prosecuted for any homicide or assault on the fetus had she survived, this is purely a statutory immunity which does not extend to Bauer.

### III.

■■■■ Bauer argues the jury's verdicts finding him guilty of aiding a suicide and of felony fetal homicide are legally inconsistent. We disagree. A jury's verdicts are legally inconsistent only if a necessary element of each offense is subject to conflicting findings. *State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989). Here, Bauer suggests the element that Cazin intended her own death is inconsistent with the causation element of felony fetal homicide. However, the argument that Cazin's suicide was an intervening cause breaking the chain of required causation between Bauer's acts and the fetus' death has been rejected above. The verdicts are legally consistent.

### IV.

■■■■ To obtain a *Schwartz* hearing inquiring into the jury's conduct, a defendant must show actual misconduct resulting in prejudice or present a claim of outside influence or extraneous information. *See State v. Hicks*, 432 N.W.2d 487, 490 (Minn.App.1988), *pet. for rev. denied* (Minn. Jan. 26, 1989); *State v. Fitzgerald*, 382 N.W.2d 892, 896 (Minn.App.1986), *pet. for rev. denied* (Minn. Apr. 24, 1986); *see also* Minn.R.Evid. 606(b). The juror's letter and statements do not indicate any extraneous influence and fail to establish any misconduct. Those statements reveal only the juror's second thoughts and possible misunderstanding of the instructions, and are thus not a sufficient basis to order a *Schwartz* hearing.

### V.

■■■■ The trial court imposed a 24–month presumptive sentence for aiding a suicide (an assigned severity level VII offense) and a concurrent 60–month sentence for felony fetal homicide, a 50 percent downward departure. The trial court cited the "type of conduct involved" in aiding a suicide as compared to other felonies involved in felony homicide charges, and stated the 60–month sentence was more "proportionate" to the severity of the offense. The trial court questioned whether the guidelines commission or legislature anticipated the causation problem presented by using aiding a suicide as an underlying felony for felony murder.

We find no causation problem with applying the felony murder rule to these facts. However, the trial court was well within its discretion in finding Bauer's conduct less serious than the typical felony murder (or feticide) offense. Moreover, the legislature enacted a separate statute for fetal homicide in the course of a less serious felony. *See* Minn.Stat. § 609.268, subd. 1 (1988). Bauer could have been charged under this statute, which clearly includes an underlying felony of aiding a suicide, and which provides a less severe range of punishment. *See id.* (up to 15 years); *cf.* Minn. Stat. § 609.2662 (up to 40 years). In 1987, the presumptive sentence for this offense was 54 months, six months *less* than the sentence Bauer received. The trial court in its discretion found aiding a suicide less serious than the conduct typically involved in a felony murder (or feticide) offense. *See generally State v. Back*, 341 N.W.2d 273, 276 (Minn.1983). For example, aiding a suicide, although an intentional offense, relies heavily on the suicide's own resolve to commit the criminal act. *Cf.* Minn.Sent. Guidelines II.D.2.a.(2) (defendant's minor or passive role may be considered in mitigation).

Bauer's argument that the sentence is cruel and unusual punishment in violation of the eighth amendment is without merit. Such a claim has been recognized when the sentence is mandatory, or a mandatory minimum. *See e.g. Sumner v. Shuman,* 483 U.S. 66, 75–78, 107 S.Ct. 2716, 2722–23, 97 L.Ed.2d 56 (1987) (mandatory death penalty statute violates the eighth amendment); *cf. State v. Walker,* 306 Minn. 105, 111, 235 N.W.2d 810, 814–15 (1975), *cert. denied,* 426 U.S. 950, 96 S.Ct. 3172, 49 L.Ed.2d 1187 (1976) (mandatory minimum 25–year sentence before parole for first-degree murder was not cruel and unusual punishment). Bauer, however, was sentenced under the guidelines scheme of determinate sentencing proportional to the severity of the offense. The trial court granted him a downward durational departure based on offense severity. We cannot substitute our judgment for the legislative determination that aiding a suicide should be a criminal offense ranked at the felony level.

## DECISION

The fetal homicide statutes do not violate the establishment clause. The evidence is sufficient to sustain the verdicts, which are not inconsistent. The trial court did not abuse its discretion in denying a *Schwartz* hearing or in sentencing Bauer.

Affirmed.