STATE of Minnesota, Respondent,

v.

Eddie Cortez SMITH, Appellant.

No. A11–1687.

Supreme Court of Minnesota.

Aug. 14, 2013.

Lori Swanson, Attorney General, Saint Paul, MN; and John Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, Saint Paul, MN, for respondent.

Bradford Colbert, Legal Assistance to Minnesota Prisoners, Saint Paul, MN, for appellant.

## OPINION

PAGE, Justice.

After a jury trial, appellant Eddie Cortez Smith was found guilty and subsequently convicted of criminal vehicular homicide under Minn.Stat. § 609.21 (2012) for causing the death of 93–year–old Edith Schouveller in a motor vehicle accident.[1] The district court sentenced Smith to 120 months' imprisonment on the criminal vehicular homicide conviction. Smith appealed and the court of appeals affirmed. *State v. Smith,* 819 N.W.2d 724 (Minn.App. 2012). We affirm.

At around 10:25 a.m. on Sunday, March 28, 2010, Schouveller was a passenger in a vehicle traveling westbound on Watson Avenue in Saint Paul. As the vehicle entered the intersection with Milton Street, it was struck on the driver's side by a Pontiac Bonneville driven by Smith. Two witnesses testified that Smith's vehicle was traveling at a high rate of speed immedi-

ately before the accident. The State's accident reconstruction expert estimated that Smith's vehicle was traveling at least 53 mph at the time of the collision. The speed limit on Milton Street was 30 mph. Police took a blood sample from Smith shortly after the collision, and testing showed he had a blood alcohol concentration of 0.11.

Following the collision, Schouveller was conscious but was dazed and bleeding from her scalp. She was transported to Regions Hospital, where doctors concluded that she had life-threatening injuries. In particular, Schouveller had a large laceration of her scalp, a rapid and unstable heart rate, and evidence of a traumatic brain injury. She also had several complex fractures of her cervical spine. Schouveller's spinal cord was undamaged in the accident, but her physician was concerned that the vertebral fractures were unstable and could shift, damaging the spinal cord and rendering Schouveller a quadriplegic. Because surgery was not an option due to Schouveller's age and bone condition, doctors fitted her with a stiff cervical collar that had to be worn at all times to keep her from moving her head and disturbing the fractures.

For the next 22 days, from March 29 to April 19, 2010, Schouveller was either hospitalized or in a nursing home. During this time, her mental functioning deteriorated and her body rapidly became "deconditioned" due to lack of movement. She was unable to stand or walk, was very weak, and needed assistance to perform the most basic tasks such as sitting, positioning herself in bed, and eating. Although a complete recovery was not out of the question, Schouveller's physicians were

---

1. Smith was also found guilty and convicted of criminal vehicular operation causing substantial bodily harm based on injuries sustained by another passenger in the vehicle Schouveller occupied. There are no issues related to Smith's criminal vehicular operation conviction before us in this appeal.

concerned that she would not make a significant recovery from her weakened state, and deemed it extremely unlikely that she would regain her previous quality of life.

While hospitalized, Schouveller developed lung problems. X-rays showed fluid in her lungs as well as small areas of associated lung collapse. Evidence presented at trial indicated that Schouveller complained of shortness of breath and that she had a couple of episodes of possible "aspiration," which occurs when a person inhales fluids, secretions, or other foreign material into the lungs rather than swallowing them. The evidence that Schouveller had episodes of possible aspiration is consistent with the other evidence establishing that Schouveller's ability to swallow was impaired after the collision. There was also testimony that, although a person can normally expel foreign material and fluids from the airways by coughing, Schouveller's stiff cervical collar was "very confining" and restricted her coughing mechanics such that "she could have inhaled some secretions."

On April 12, 2010, during Schouveller's brief stay in a nursing home, a nurse discovered Schouveller having difficulty breathing and suffering from audible congestion of her airways. She appeared "dusky" and had very low blood oxygen levels. As a result, Schouveller was transported back to the hospital, where doctors diagnosed her with aspiration and pneumonia.

On April 19, 2010, Schouveller experienced acute respiratory failure. Her oxygen levels dropped, she struggled to breathe, and her skin turned pale and blue. Doctors gave her oxygen, but determined that she needed to be intubated and placed on a respirator in order to continue to live. Relying on Schouveller's living will, which prohibited the use of certain life-saving measures, including respiratory

support, if "there [was] no reasonable expectation of [Schouveller] recovering or regaining a meaningful quality of life," the doctors declined to place her on respiratory support. Schouveller died that evening. There was testimony from Schouveller's physician that, had Schouveller been intubated, she would have continued to live. The treating physician also testified, however, that there was no "guarantee anyone [was] going to live" with the procedure.

In his appeal to our court, we understand Smith to raise three interrelated challenges to his criminal vehicular homicide conviction. He contends that the district court failed to properly instruct the jury on causation, that the State presented insufficient evidence to prove causation, and that the do-not-resuscitate order in Schouveller's living will was a superseding cause of her death. Although interrelated, we will address each of Smith's challenges in turn.

■■■ "A person is guilty of criminal vehicular homicide ... if the person causes ... the death of another as a result of operating a motor vehicle ... while having an alcohol concentration of 0.08 or more." Minn.Stat. § 609.21, subd. 1(3). Under the plain language of the statute, a defendant is not guilty of vehicular homicide unless he "causes" the victim's death. *Id.* In this context, "causes" means that the defendant's operation of a motor vehicle must be the "proximate cause" of the victim's death "without the intervention of an efficient independent force in which defendant did not participate or which he could not reasonably have foreseen." *State v. Schaub*, 231 Minn. 512, 517, 44 N.W.2d 61, 64 (1950). In order to prove proximate cause, the State must show that the defendant's acts were a substantial factor in causing the death. *State v. Olson*, 435 N.W.2d 530, 534 (Minn.1989). "If the defendant seeks to establish a superseding

cause, 'the intervening conduct must be the sole cause of the end result.'" *State v. Gatson,* 801 N.W.2d 134, 146 (Minn.2011) (quoting *Olson,* 435 N.W.2d at 534).

## I.

■ We first address Smith's argument that the district court erred in instructing the jury on "cause" and "superseding cause." The instruction in question stated:

A cause is a cause which had a substantial part in bringing about the occurrence at issue. A superseding cause is defined as other effects which comes after the original occurrence and which turns aside the natural sequence of events and produces a result which would not otherwise have followed from the original event.

Smith concedes that the district court's instruction correctly defined "superseding cause." Nevertheless, he argues that the instruction was erroneous because it did not explicitly state that a finding of a superseding cause defeats the State's proof of causation. As a result, Smith argues "the jury could have determined that the do-not-resuscitate order was a superseding cause ... but nonetheless convicted Mr. Smith of homicide."

■ Smith did not object to the instruction. In fact, Smith's counsel told the court, "I think your instruction is fine." Therefore, our review is for plain error. *See State v. Crowsbreast,* 629 N.W.2d 433, 437 (Minn.2001). To establish plain error, Smith must demonstrate: (1) that the trial court erred; (2) that the error was plain; and (3) that the error affects substantial rights. *State v. Morton,* 701 N.W.2d 225, 234 (Minn.2005). If these three elements are met, "[w]e will then correct the error only if the fairness, integrity, or public reputation of the judicial proceeding is seriously affected." *Id.*

■ We conclude that the district court's instruction was not erroneous. The trial court has "considerable latitude in selecting the language of jury instructions." *State v. Baird,* 654 N.W.2d 105, 113 (Minn.2002). We review instructions as a whole to determine whether they fairly and adequately state the law. *State. v. Evans,* 756 N.W.2d 854, 874 (Minn.2008). Only if a jury instruction materially misstates the law is it erroneous. *State v. Goodloe,* 718 N.W.2d 413, 421 (Minn.2006). Here, the instruction explained that a superseding cause "turns aside the natural sequence of events and produces a result which would not otherwise have followed from the original event." We conclude that the instruction, as given, made clear to the jury that a finding of a superseding cause would defeat the State's proof of causation. The plain language of the instruction communicated to the jury that, if there was a superseding cause, then Schouveller's death "would not otherwise have followed" from the original motor vehicle accident. If Schouveller's death "would not otherwise have followed" from the accident, then by definition Smith's conduct could not have played "a substantial part in bringing about" her death. Therefore, based on the instruction given, the jury would have understood that finding a superseding cause would necessarily mean that Smith's conduct could not have played "a substantial part in bringing about" Schouveller's death. On that basis, we are satisfied that the instruction fairly and adequately states the law and conclude that it was not erroneous.

## II.

■ We next address Smith's argument that the State failed to present sufficient evidence to demonstrate a causal chain between the injuries Schouveller sustained in the motor vehicle accident and the pneumonia and aspiration that ulti-

mately led to her death. The State counters that it need not show that Smith's actions were the *immediate* cause of Schouveller's death, merely that they were the proximate cause. The State further argues that there was sufficient evidence for the jury to find that the injuries Schouveller sustained in the accident led to the complications that resulted in her death.

When reviewing a sufficiency challenge, we "view the evidence in the light most favorable to the verdict and assume that the fact finder rejected any evidence inconsistent with the verdict." *State v. Pendleton,* 759 N.W.2d 900, 909 (Minn.2009). "The verdict will not be overturned if the facts in the record and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt." *State v. Cruz–Ramirez,* 771 N.W.2d 497, 509 (Minn.2009).

To the extent that Smith's argument is that his conduct must be the immediate cause of Schouveller's death in order for his conviction to be sustained, his argument fails. As we pointed out above, the word "causes" as used in Minn.Stat. § 609.21, subd. 1, means proximate cause. *Schaub,* 231 Minn. at 517, 44 N.W.2d at 64. And, on the record presented here, we conclude that the State presented sufficient evidence to prove that Smith's conduct was the proximate cause of Schouveller's death. The evidence showed that Schouveller was a passenger in a vehicle that was involved in a violent and forceful collision with a vehicle driven by Smith, which resulted in immediate traumatic injuries, including a lacerated scalp, signs of a brain injury, multiple fractured cervical vertebrae, and a bruised torso. The injuries rendered Schouveller immobile, requiring her to need assistance to eat, use the toilet, sit up, and even reposition herself in bed. As a result, Schouveller's

body became "deconditioned" from the lack of movement and her mental and physical condition deteriorated until she died from respiratory problems on April 19, 2010.

The fact that the immediate medical causes of Schouveller's death were aspiration with hypoxia and pneumonia does not render the evidence of causation insufficient. A defendant's actions need not be the immediate cause of death in a criminal vehicular homicide case. *See State v. Smith,* 264 Minn. 307, 320, 119 N.W.2d 838, 848 (1962) (holding that the State proved causation even though the defendant's " 'acts were not the immediate cause of death' " (quoting *State v. Rounds,* 104 Vt. 442, 160 A. 249, 252 (1932))). In cases in which the immediate cause of death is a disease or medical condition, the State may prove proximate cause by showing " 'that the injury caused the disease from which death resulted.' " *Id.* at 319, 119 N.W.2d at 847 (quoting *Mattfeld v. Nester,* 226 Minn. 106, 124, 32 N.W.2d 291, 304 (1948)). In other words, the defendant is guilty of homicide if his act was " *the cause of the cause'* " of death. *Id.* at 321, 119 N.W.2d at 848 (quoting *Rounds,* 160 A. at 252).

The State provided sufficient evidence for the jury to conclude that the aspiration (and resulting pneumonia and hypoxia) that was the immediate cause of Schouveller's death was, in turn, caused by the injuries directly inflicted by Smith's conduct. In particular, the jury heard testimony that aspiration occurs when a person inhales fluids, secretions, or other foreign material into the lungs rather than swallowing them. Schouveller's ability to swallow, however, was impaired as a result of the injuries she received in the accident. The stiff cervical collar she wore to treat her neck fractures also restricted her coughing mechanics, which inhibited her

ability to clear foreign material from her airways through coughing. Schouveller's physician testified that, because of "the way we had to treat her neck fractures, she could have inhaled some secretions." Moreover, the State presented expert testimony from a county medical examiner that Schouveller's fatal episode of aspiration with hypoxia was "due to complications of multiple traumatic injuries due to a motor vehicle accident," and that the traumatic injuries from the car accident were the cause of the fatal complications. The medical examiner noted that injured elderly patients are susceptible to complications, especially aspiration and pneumonia from lying in a "down" position in the hospital. Viewing this evidence in the light most favorable to the verdict, we conclude that the evidence was sufficient to support the jury's conclusion that Smith's acts were a substantial causal factor leading to Schouveller's death, and that her death was a natural consequence of the injuries she received as a result of those acts.

## III.

■ Having concluded that the evidence is sufficient to prove that Smith proximately caused Schouveller's death does not end our inquiry. We must still determine whether the do-not-resuscitate order in Schouveller's living will was a superseding cause of her death. We have held that, "[t]o be a superseding cause, the intervening conduct must be the sole cause of the end result." *Olson*, 435 N.W.2d at 534; *accord Gatson*, 801 N.W.2d at 146.

Smith argues that the do-not-resuscitate order was a superseding cause because Schouveller would have continued to live had her doctors ordered intubation. The State argues that the evidence was sufficient for the jury to conclude that Schouveller's decision to decline medical intervention was not a superseding cause of her

death. Moreover, the State urges that, as a matter of law, a do-not-resuscitate order can never be a superseding cause because such orders are always foreseeable and do not actively cause death.

■ We decline to adopt the State's argument that a victim's refusal of medical care may *never*, as a matter of law, be a superseding cause of death. As we have previously stated, the existence of a superseding cause may be a question of fact for the jury if the evidence is such that reasonable minds could differ on the question. *See Regan v. Stromberg*, 285 N.W.2d 97, 100 (Minn.1979); *see also Lubbers v. Anderson*, 539 N.W.2d 398, 402 (Minn. 1995) (stating that proximate causation is a question of fact for the jury unless reasonable minds can arrive at only one conclusion); *Gatson*, 801 N.W.2d at 148 (concluding that the trial court did not err in failing to instruct the jury on superseding cause when the defendant failed to present evidence from which a jury could find that removing life support was the sole cause of death). Given our standard of review when evaluating jury instructions, we cannot say the district court erred in submitting the question of superseding cause to the jury.

Because the question of superseding cause was submitted to the jury, our review is limited to determining whether the evidence at trial was sufficient for the jury to find that the do-not-resuscitate order was not a superseding cause of Schouveller's death. Our careful review of the record satisfies us that the evidence was sufficient. As discussed above, Smith's operation of his motor vehicle resulted in critical injuries to Schouveller, which in turn led to serious complications—including the deconditioning of her body, aspiration, hypoxia, pneumonia, and acute respiratory failure—that precipitated the need to intubate and ultimately ended her life. Although there was testimony that intuba-

tion might have delayed, or even prevented, Schouveller's death from the episode of acute respiratory failure on April 19, we cannot say that the jury was compelled to find the do-not-resuscitate order was the *sole* cause of Schouveller's death. Given the evidence at trial, the jury was free to conclude that the do-not-resuscitate order merely limited the measures that doctors could undertake to prevent a natural consequence of Smith's conduct from coming to fruition, rather than actively producing a death that would not otherwise have followed from the accident. Even if Schouveller had been intubated, the jury could still have reasonably concluded that Schouveller would have died from her injuries, in light of her deteriorating physical and mental condition, the fact that there had been no sign of overall healing or recovery since the accident, and the physician's testimony that there was no guarantee that intubation would have prevented Schouveller's death. Therefore, the evidence was sufficient for the jury to conclude that the do-not-resuscitate order was not a superseding cause of her death.

In sum, the district court properly instructed the jury on the issues of causation and superseding causation, and the evidence at trial was sufficient to prove that Smith's conduct was the proximate cause of Schouveller's death without the intervention of a superseding cause. Accordingly, we affirm Smith's conviction.

Affirmed.

WRIGHT, J., took no part in the consideration or decision of this case.

LILLEHAUG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.