*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1043**

State of Minnesota,
Respondent,

vs.

Demetreus Anthony McGinnis,
Appellant

**Filed July 11, 2016
Affirmed
Worke, Judge**

Stearns County District Court
File No. 73-CR-14-2166

Lori Swanson, Attorney General, Michael Everson, Assistant Attorney General, St. Paul, Minnesota; and

Janelle Kendall, Stearns County Attorney, St. Cloud, Minnesota (for respondent)

Christopher J. Cadem, Carolyn A. Burghart, Cadem Law Group, PLLC, Fergus Falls, Minnesota (for appellant)

        Considered and decided by Worke, Presiding Judge; Reilly, Judge; and Klaphake, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**WORKE**, Judge

Appellant argues that: (1) the jury's verdicts are inconsistent; (2) the evidence insufficiently supports the guilty verdict for third-degree unintentional murder and the third-degree witness-tampering conviction; (3) the district court erred in instructing the jury; (4) the prosecutor committed misconduct; and (5) he received ineffective assistance of counsel. We affirm.

**FACTS**

On March 13, 2014, A.D. transported M.G. to a healthcare facility. M.G. stated that "a male name Demetri" shot him with a ".22 automatic." M.G. died from a gunshot wound to his chest. Law enforcement went to a business where the suspect was allegedly employed, and the store manager confirmed that appellant Demetreus Anthony McGinnis worked there. Law enforcement found a .25 caliber handgun a half-mile from the store and two empty shell casings that matched the gun behind the store. McGinnis arrived at the store a few hours later. McGinnis had a red mark on his cheek, his knuckles had scuff marks, and he appeared nervous. McGinnis did not report being robbed or assaulted.

Chief Deputy Dan Miller searched A.D.'s vehicle and found a plastic bag marked "PA" containing marijuana. At McGinnis's residence, law enforcement found a digital scale, boxes for a shrink-wrap device, and gallon bags—one of which was marked "PE"

in black marker.[1]  McGinnis was indicted on six counts: (1) first-degree intentional murder, (2) second-degree intentional murder, (3) second-degree unintentional felony murder, (4) third-degree unintentional murder, (5) prohibited person in possession of a firearm, and (6) third-degree witness tampering.  In February 2015, a jury trial commenced.

A.D. testified that M.G. intended to purchase a pound of marijuana from McGinnis with $3,200 in counterfeit money, and that neither he nor M.G. brought a gun to the arranged buy.  A.D. picked up M.G. and drove to the store where McGinnis worked.  A.D. testified that M.G. and McGinnis got into McGinnis's car behind the store. Shortly after, M.G. got out of McGinnis's vehicle and ran toward A.D.'s vehicle. McGinnis ran after M.G., said "give my sh-t back," and pointed a gun at M.G.  After wrestling with McGinnis over the gun, M.G. got into A.D.'s vehicle with a bag of marijuana and the gun.  A.D. drove to a healthcare facility because M.G. was suffering from a gunshot wound.  As A.D. drove to the healthcare facility, M.G. threw the gun out of the vehicle's window.

G.M. testified that she told McGinnis on March 13 that M.G. wished to purchase marijuana.  M.G. and A.D. followed G.M. to McGinnis's place of employment.  G.M. did not see M.G. or A.D. with a gun.  G.M. testified that the group met McGinnis behind the store, and that McGinnis hit M.G. several times after M.G. got into McGinnis's car. M.G. got out of the car and ran to A.D.'s vehicle.  McGinnis chased M.G., pointed a gun

---

[1] Chief Deputy Miller testified that people who sell drugs in large quantities typically mark their bags.

3

at him, and said, "Give me that sh-t or I'm going to kill you." M.G. and McGinnis wrestled over the gun, and G.M. heard the gun fire several times.

McGinnis called G.M. after the shooting because he wanted to purchase G.M.'s cell phone. G.M. refused to disclose her location because she feared he would shoot her. G.M. and her friend, S.L., met McGinnis at a gas station that had security cameras. McGinnis arrived with his friend, C.B., and started pacing in front of S.L.'s car. McGinnis pointed at G.M. and said, "I need to talk to you and only you." G.M. got into C.B.'s car but left the door open because she feared that McGinnis might drive away. McGinnis purchased G.M.'s cell phone, told her to keep her mouth shut, and said, "If the cops talk to you, you don't know me, you weren't there, [you] don't know nothing."

S.L. testified that she did not see G.M. or M.G. with a gun on March 13. S.L. also testified that G.M. was hyperventilating, acting hysterical after the shooting, and appeared "really scared" after speaking with McGinnis.

McGinnis testified that he attempted to sell two cell phones to M.G. on March 13, and that M.G. paid with counterfeit money. When McGinnis noticed that the money was fake, M.G. grabbed the money and punched him. McGinnis testified that he chased M.G., and M.G. pointed a gun at him. McGinnis testified that he shot M.G. once as the two wrestled over the gun. McGinnis denied taking G.M.'s phone and threatening her. The jury found McGinnis guilty of second-degree unintentional felony murder, third-degree unintentional murder, and third-degree witness tampering. This appeal follows.

4

**D E C I S I O N**

*Inconsistent verdicts*

McGinnis argues that his conviction for second-degree unintentional felony murder and acquittal for felon in possession of a firearm are legally and logically inconsistent. "The question of whether verdicts are legally inconsistent is a question of law, which [appellate courts] review de novo." *State v. Leake*, 699 N.W.2d 312, 325 (Minn. 2005).

When a defendant is found guilty of one count, he is not entitled to a new trial because the jury found him not guilty of another count, "even if the . . . verdicts may be said to be *logically* inconsistent." *State v. Juelfs*, 270 N.W.2d 873, 873–74 (Minn. 1978) (emphasis added). This is because "the jury in a criminal case has the power of lenity— that is, the power to bring in a verdict of not guilty despite the law and the facts." *State v. Perkins*, 353 N.W.2d 557, 561 (Minn. 1984). "Verdicts are *legally* inconsistent when proof of the elements of one offense negates a necessary element of another offense." *State v. Cole*, 542 N.W.2d 43, 50 (Minn. 1996).

In *Leake*, the appellant made a similar argument, challenging the jury's guilty verdict on one count but a not guilty verdict on another. 699 N.W.2d at 325. The supreme court affirmed, stating: "Because the instant case involves only logical inconsistencies—between a verdict of acquittal on one count and a verdict of guilty on another count—we hold that the verdicts are not legally inconsistent . . . ." *Id.* Here, the jury found McGinnis guilty of second-degree unintentional felony murder but acquitted

5

him of felon in possession of a firearm. Therefore, reversal is not required because the verdicts are *logically* inconsistent as opposed to *legally* inconsistent.

### *Insufficient evidence*

McGinnis argues that the evidence is insufficient to support the guilty verdict for third-degree unintentional murder and the third-degree witness-tampering conviction. This court reviews an insufficient-evidence claim in the light most favorable to the verdict. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). A verdict shall not be disturbed if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn. 2004). An appellate court "assume[s] that the jury believed the state's witnesses and disbelieved contrary evidence." *Dale v. State*, 535 N.W.2d 619, 623 (Minn. 1995).

McGinnis first argues that the evidence insufficiently supports the guilty verdict for third-degree unintentional murder. A "conviction" occurs when a jury's guilty verdict is accepted and recorded by the court. Minn. Stat. § 609.02, subd. 5(2) (2012). Here, the jury returned guilty verdicts for second-degree unintentional felony murder (count three) and third-degree unintentional murder (count four). The district court entered a conviction on count three but did not enter a conviction on count four. *See* Minn. Stat. § 609.04, subd. 1 (2012) (stating that an actor may be convicted of the crime charged or an included offense, but not both).

In *State v. Ortega*, a jury found the defendant guilty of aiding and abetting first-degree premeditated murder and aiding and abetting first-degree felony murder while committing a burglary. 798 N.W.2d 59, 62 n.1 (Minn. 2011). The district court convicted the defendant of aiding and abetting first-degree premeditated murder. *Id.* at 67. On appeal, the defendant challenged the jury's verdict on the charge of aiding and abetting first-degree felony murder while committing a burglary. *Id.* at 62 n.1.

The supreme court declined to address the issue, stating: "Because we affirm appellant's conviction and sentence for aiding and abetting first-degree premeditated murder, we need not consider appellant's arguments regarding the burglary verdict." *Id.*; *see State v. Bustos*, 861 N.W.2d 655, 665 (Minn. 2015) ("Because we *reverse* the first-degree murder conviction, *it is also necessary* to address Bustos's challenge to the guilty verdict in connection with the second-degree murder charge." (emphasis added)). Therefore, because the district court did not enter a conviction, we need not address McGinnis's challenge to third-degree unintentional murder.

McGinnis next argues that the evidence insufficiently supports his conviction for third-degree witness tampering. A person is guilty of third-degree witness tampering if he "intentionally prevents or dissuades or attempts to prevent or dissuade by means of intimidation, a person from providing information to law enforcement authorities concerning a crime." Minn. Stat. § 609.498, subd. 2a(a)(3) (2012).

McGinnis first argues that the evidence is insufficient because he did not engage in threatening behavior or make a threatening statement to G.M. But third-degree

witness tampering does not require threats. *Compare* Minn. Stat. § 609.498, subd. 1(a) (2012) (stating that a first-degree offense involves "means of force or threats of injury"), *with* Minn. Stat. § 609.498, subd. 2a(a)(3) (stating that a third-degree offense involves "means of intimidation").

McGinnis also argues that the evidence is insufficient because nothing indicates that he intended to intimidate G.M. "Intimidate" means "[t]o make timid; fill with fear." *The American Heritage College Dictionary* 712 (3d ed. 1999). The use of the word "intentionally" makes witness tampering a specific-intent offense. *See* Minn. Stat. § 609.02, subd. 9(3) (2012). A person acts "intentionally" when he believes that the act performed, if successful, will cause a certain result. *Id.* Intent can be proven by circumstantial evidence, but "such intent must be the only reasonable inference when the evidence as a whole is viewed in the light most favorable to the state." *State v. Collins*, 580 N.W.2d 36, 44 (Minn. App. 1998), *review denied* (Minn. July 16, 1998).

Here, G.M. refused to tell McGinnis where she was because she feared he would shoot her, and she ultimately met him at a gas station because it had security cameras. McGinnis paced in front of G.M., refused to enter S.L.'s vehicle, and pointed at G.M. while stating that he would talk only to her. McGinnis told G.M. to keep her mouth shut, and he said, "If the cops talk to you, you don't know me, you weren't there, [you] don't know nothing." S.L. testified that G.M. appeared scared at the gas station. *See State v. Schweppe*, 306 Minn. 395, 401, 237 N.W.2d 609, 614 (1975) (stating that a victim's

reaction is relevant to the defendant's intent). Therefore, the evidence sufficiently supports McGinnis's conviction for third-degree witness tampering.

### *Superseding-cause instruction*

McGinnis argues that the district court did not properly instruct the jury on "subsequent intervening superseding cause." We review for plain error because McGinnis did not object to the district court's instructions. *See State v. Baird*, 654 N.W.2d 105, 113 (Minn. 2002). To succeed, McGinnis must show (1) error, (2) that is plain, and (3) that affects substantial rights. *Id.* If all three prongs are met, an appellate court then determines "whether the error must be addressed to ensure the fairness and integrity of the judicial proceedings." *Id.*

District courts have "considerable latitude in selecting the language of jury instructions, but instructions may not materially misstate the law." *Id.* Instructions are reviewed as a whole to determine whether they adequately state the law. *State v. Smith*, 835 N.W.2d 1, 5 (Minn. 2013). A jury instruction is erroneous only if it "materially misstates the law." *Id.*

Here, the district court stated: "'Superseding cause' is a cause which comes after the original event and which alters the natural sequence of events and produces a result which would not otherwise have occurred." In *Smith*, the supreme court analyzed a nearly identical instruction, and the defendant similarly argued that the instruction did not explicitly state that a superseding cause defeats the state's proof of causation. *Id.* The

9

supreme court held that the instruction was not erroneous. *Id.* Therefore, the district court's instruction was not erroneous.

### *Accomplice-corroboration instruction*

McGinnis argues that the district court erred by failing to give an accomplice-corroboration instruction. McGinnis did not object so we review for plain error. *State v. Vasquez*, 776 N.W.2d 452, 457 (Minn. App. 2009). District courts must instruct juries on accomplice testimony when "it is reasonable to consider any witness against the defendant to be an accomplice." *State v. Strommen*, 648 N.W.2d 681, 689 (Minn. 2002). An accomplice includes a witness who "could have been indicted and convicted for the crime with which the defendant is charged. . . . [T]he witness must have played a knowing role in the crime—the witness'[s] mere presence at the scene is not sufficient." *State v. Pendleton*, 759 N.W.2d 900, 907 (Minn. 2009) (quotation omitted). An accomplice is also liable "for any other crime committed in pursuance of the intended crime if reasonably foreseeable by the person as a probable consequence of committing or attempting to commit the crime intended." Minn. Stat. § 609.05, subd. 2 (2012).

Here, A.D. was not an accomplice of McGinnis because he assisted M.G. in purchasing marijuana. *State v. Hadgu*, 681 N.W.2d 30, 34 (Minn. App. 2004), *review denied* (Minn. Sept. 21, 2004); *see State v. Swyningan*, 304 Minn. 552, 556, 229 N.W.2d 29, 32 (1975) (concluding that one who purchases drugs is not the seller's accomplice). G.M. also was not an accomplice. G.M. helped arrange the sale by contacting McGinnis and leading M.G. and A.D. to McGinnis. But the record does not indicate that it was

10

"reasonably foreseeable" to G.M. that McGinnis would shoot M.G. *See* Minn. Stat. § 609.05, subd. 2 (establishing liability for crimes committed in pursuance of an intended crime if it was "reasonably foreseeable").

Moreover, plain error affects substantial rights if there is a "reasonable likelihood that the error had a significant effect on the jury's verdict." *See State v. Vance*, 734 N.W.2d 650, 660 n.8 (Minn. 2007). Here, several witnesses testified that McGinnis agreed to sell a pound of marijuana to M.G. Law enforcement found a pound of marijuana in A.D.'s vehicle in a plastic bag marked with black marker. Law enforcement found a similar bag at McGinnis's residence, along with marijuana residue and boxes for shrink-wrap equipment. Several witnesses testified that McGinnis pointed a gun at M.G, and one witness testified that she heard gunshots. Therefore, even if the district court committed plain error, the error did not significantly affect the verdicts.

*Prosecutorial misconduct*

McGinnis alleges several instances of unobjected-to prosecutorial misconduct. Unobjected-to alleged prosecutorial misconduct is reviewed according to a modified plain-error test. *State v. Carridine*, 812 N.W.2d 130, 146 (Minn. 2012). The appellant bears the burden of establishing plain error. *Id.* If he meets his burden, then the state must prove that the error did not affect the appellant's substantial rights. *Id.* An appellate court then determines "whether the error must be addressed to ensure the fairness and integrity of the judicial proceedings." *Baird*, 654 N.W.2d at 113.

11

"The overarching problem presented by prosecutorial misconduct is that it may deny the defendant's right to a fair trial." *State v. Washington*, 725 N.W.2d 125, 133 (Minn. App. 2006), *review denied* (Minn. Mar. 20, 2007). We will reverse a conviction if the alleged misconduct, considered in light of the whole trial, impaired the defendant's right to a fair trial. *Id.*

Here, McGinnis has not met his burden of establishing prosecutorial misconduct sufficient to impair his right to a fair trial, but we again take this opportunity to remind prosecutors of their obligations under our system of jurisprudence. Prosecutors hold tremendous power. There are countless ways in which prosecutors can prejudice the fact-finding process and undermine a defendant's right to a fair trial. In fact, many of the same prosecutorial mistakes on our review are repeated. "Reducing the incidence of prosecutorial misconduct is a shared obligation . . . even in the absence of objection . . . ." *State v. Ramey*, 721 N.W.2d 294, 303 (Minn. 2006) (quotation omitted). Because McGinnis raised numerous instances of prosecutorial misconduct, we review each allegation in turn.

*1. Voir dire*

McGinnis argues that the prosecutor committed misconduct during voir dire when he stated that a drug deal occurred on March 13. "The [district] court must allow the parties to conduct voir dire examination to discover grounds for challenges for cause and to assist in the exercise of peremptory challenges." Minn. R. Crim. P. 26.02, subd. 4(1).

12

Here, the prosecutor referenced an underlying "drug sale" to two prospective jurors to discover whether the jurors could remain objective even if the victim did not have "clean hands." McGinnis does not establish plain error because he fails to cite caselaw, rules, or standards of conduct to support his argument. *State v. Wren*, 738 N.W.2d 378, 393 (Minn. 2007) (stating that a defendant must show that an error "contravenes case law, a rule, or a standard of conduct"). Moreover, the prosecutor's questions were appropriate. *See Washington*, 725 N.W.2d at 135 ("The prosecutor's questions were uniformly directed at the legitimate purpose of identifying bias.").

### 2. *Eliciting C.B.'s testimony*

McGinnis argues that the prosecutor committed misconduct when he elicited testimony from C.B., knowing that he would assert his Fifth-Amendment privilege against self-incrimination. "[When] the prosecution calls a witness for the purpose of prejudicing the defendant in the minds of the jury, *knowing* that the witness will claim immunity, reversible error results, regardless of actual prejudice." *State v. Morales*, 788 N.W.2d 737, 753 (Minn. 2010) (emphasis added) (quotation omitted).

Here, the prosecutor explained that he had difficulties communicating with C.B., and that he "would not be surprised" if C.B. attempted to invoke his Fifth-Amendment privilege. But the record does not establish that the prosecutor *knew* that C.B. would claim immunity. *See id.* at 755 (holding that the state did not call a witness in bad faith when it knew "with a great degree of certainty" that the witness would refuse to testify). Moreover, the prosecutor said: "[M]y view is . . . he has no Fifth Amendment privilege."

13

*See id.* at 754 (reasoning that because the state believed that the privilege was inapplicable, the state may have had a legitimate reason to call the witness). McGinnis has not established plain error.

### 3. *Closing argument*

McGinnis argues that the prosecutor committed misconduct on three occasions during his closing argument. Prosecutors have "considerable latitude" in a closing argument. *State v. Williams*, 586 N.W.2d 123, 127 (Minn. 1998). When determining whether a prosecutor committed misconduct during a closing argument, this court "consider[s] the closing argument as a whole rather than focus[ing] on particular phrases or remarks." *State v. Jackson*, 714 N.W.2d 681, 694 (Minn. 2006) (quotations omitted).

McGinnis first argues that the prosecutor committed misconduct when he stated: "Who is not referenced when [defense counsel] told you about the case at the opening and just now . . . ? Not one reference to [McGinnis]'s version, or lack thereof, of what happened. And why not? Because what he told isn't true and it doesn't ring true and he left pieces out." A prosecutor may "point to circumstances which cast doubt on a witness'[s] veracity . . . but he may not throw onto the scale of credibility the weight of his own . . . opinion." *State v. Ture*, 353 N.W.2d 502, 516 (Minn. 1984).

The statement that McGinnis did not tell the truth was improper but does not require reversal. The statement occurred once in a closing argument that encompassed over 30 pages of transcript, the district court instructed the jury that the attorneys' arguments were not evidence, and the evidence presented at trial sufficiently supports

14

McGinnis's convictions. *See id.* at 516–17 (concluding that reversal was not required despite the prosecutor's claim that the defendant was "not exactly telling the truth").

McGinnis next argues that the prosecutor improperly disparaged the defense and questioned the veracity of his testimony by stating: "Wow. The Oscars were on TV Sunday night. You saw a performance by . . . McGinnis today." An advocate "may not throw onto the scales of credibility the weight of his own personal opinion." *Id.* at 516. Prosecutors also cannot disparage the defense in closing arguments. *State v. Griese*, 565 N.W.2d 419, 427 (Minn. 1997).

Here, the prosecutor's statement was improper. *See Ture*, 353 N.W.2d at 516 (concluding that referring to the defendant's testimony, in part, as "a lot of nonsense" and as "a joke" was improper). But, again, the statement occurred once in a lengthy closing argument, the district court instructed the jury that the attorneys' arguments were not evidence, and the evidence sufficiently supports McGinnis's convictions. *See Griese*, 565 N.W.2d at 427–28 (concluding that despite disparaging comments by the prosecution, the defendant was not denied a fair trial).

McGinnis finally argues that the prosecutor misstated the evidence by stating that McGinnis threatened G.M. Closing arguments may be based on "the evidence presented at trial and inferences reasonably drawn from that evidence." *State v. DeWald*, 463 N.W.2d 741, 744 (Minn. 1990). Here, G.M. and S.L. testified that G.M. was scared of McGinnis. Additionally, shortly after shooting M.G., McGinnis requested that G.M. enter C.B.'s car with him. McGinnis paced in front of G.M., pointed at her, and refused

15

to talk to her in front of S.L. McGinnis told G.M. to keep her mouth shut and to lie to law enforcement. The prosecutor made a reasonable inference that McGinnis threatened G.M.

### 4. *Direct examination*

McGinnis argues that the prosecutor committed misconduct by using the word "we" while examining witnesses. But McGinnis does not cite any authority indicating that the state's method of questioning constitutes misconduct. *See State v. Wembley*, 712 N.W.2d 783, 795 (Minn. App. 2006) (stating that "[a]n assignment of error in a brief based on 'mere assertion' and not supported by argument or authority is waived"), *aff'd*, 728 N.W.2d 243 (Minn. 2007).

McGinnis cites only *State v. Walsh*, in which the prosecutor stressed to the jury that "your Anoka County Crime Lab is one of the finest and most respected Crime Labs in the state." 495 N.W.2d 602, 606–07 (Minn. 1993). The supreme court held that the statement was improper not because of the use of the word "your," but because the statement constituted an effort to bolster the jury's belief in the reliability of the physical and scientific evidence. *Id.* Thus, *Walsh* is distinguishable.

### 5. *Referencing "tax dollars"*

McGinnis argues that the state improperly justified its "failure to collect evidence" by referencing the need to spend tax dollars. McGinnis argues that the comment was irrelevant and calculated to inflame the passions and prejudices of the jury. A prosecutor

"must avoid inflaming the jury's passions and prejudices against the defendant." *State v. Porter*, 526 N.W.2d 359, 363 (Minn. 1995).

Here, the prosecutor asked: "So if we spent the tax dollars to check it out, our thought is . . . likely there's [gunshot residue] on him, right?" McGinnis simply cites *Porter*, but he does not explain *Porter*'s relevance. While *Porter* states that prosecutors may not inflame the passions and prejudices of the jury, it does not reference "tax dollars." *See id.* McGinnis's argument is unpersuasive because he does not cite relevant authority to support his bare assertion that the state committed plain error. *See Wembley*, 712 N.W.2d at 795.

### 6. *Testimony relating to an EBT and credit card*

McGinnis argues that the state improperly elicited testimony that McGinnis possessed an EBT and credit card that belonged to someone else to inflame the passions or prejudices of the jury. We are not persuaded. Here, McGinnis denied selling M.G. marijuana, but when he was arrested, law enforcement found multiple EBT cards and a credit card in his possession that did not belong to him. This information could be relevant circumstantial evidence as to whether McGinnis engaged in selling drugs. *See United States v. Spotted Elk*, 548 F.3d 641, 646, 669 (8th Cir. 2008) (considering the fact that a defendant convicted of multiple drug crimes was in possession of multiple EBT cards). Moreover, McGinnis's substantial rights were not affected when considering the record as a whole.

17

*7. Burden of proof*

McGinnis argues that the prosecutor committed misconduct by implying that he had a duty to present evidence. "The prosecutor may not shift the burden of proof to the accused by commenting about his failure to call witnesses or to present evidence." *State v. Race*, 383 N.W.2d 656, 664 (Minn. 1986).

During cross-examination, the prosecutor asked:

> THE STATE: Did you hear [P.H.] testify?
> THE DEFENDANT: Yes.
> THE STATE: Did he testify about such a call being made?
> THE DEFENDANT: No.
> THE STATE: Wasn't even asked about it, was he?
> THE DEFENDANT: No.
> THE STATE: You told your attorney about it, didn't you?
> THE DEFENDANT: (No response.)
> THE STATE: [Defense counsel] knew about that when Mr. Hamilton was on the stand, didn't he?
> THE COURT: I'm going to object to that on my own and sustain it.
> . . . .
> THE STATE: [W]as [C.B.] asked any questions about this conversation where [G.M.] was saying, I feel bad for you, [I] want to help you out . . . ; was he asked any of those questions when he was on the stand?
> DEFENSE COUNSEL: Objection; relevance.
> THE COURT: I'll overrule it on relevance.
> THE STATE: Was he asked any of those questions?
> THE DEFENDANT: No.

This court previously held that a prosecutor's statements did not shift the burden of proof when the prosecutor also stated in his closing argument that the defendant did not have to prove anything, and the district court instructed the jury accordingly. *See State v. Tate*, 682 N.W.2d 169, 178–79 (Minn. App. 2004), *review denied* (Minn. Sept.

18

29, 2004). Here, the state indicated in closing argument that it had the burden of proof throughout the entire trial, and the district court instructed the jury accordingly.

   8. *Referencing the jury's "promise" to follow the law*

McGinnis argues that the state committed misconduct in its opening argument by telling the jury that it promised to return a verdict. The state argued:

> Doubt based on reason and common sense is what reasonable doubt is. If we don't prove the allegations, then by all means you should find him not guilty. If we prove the allegations, you promised to follow the law, and you've indicated that you can make a judgment as to whether or not the individual is guilty or not guilty.

Referencing a "pact" with the jury to return a verdict may constitute prosecutorial misconduct. *See State v. Jones*, 277 Minn. 174, 188–89, 152 N.W.2d 67, 77–78 (1967). But here the state merely referenced the jury's oath to follow the law and did not commit prosecutorial error.

When determining whether McGinnis should receive a new trial due to prosecutorial misconduct, an appellate court considers the record as a whole. *See Ture*, 353 N.W.2d at 517. Here, the prosecutor made two improper comments that account for less than one page in a lengthy trial transcript. We disapprove of the prosecutor's comments, but given the strength of the evidence, we cannot conclude that the jury based its decision on the comments.

**Ineffective assistance of counsel**

McGinnis argues that he received ineffective assistance of counsel because his attorney failed to request an accomplice-corroboration instruction, object to the state's

19

"overwhelming" use of leading questions, and object to numerous instances of alleged prosecutorial misconduct. Appellate courts apply a two-prong test to determine whether a defendant should receive a new trial because of ineffective assistance of counsel. *Gates v. State*, 398 N.W.2d 558, 561 (Minn. 1987). McGinnis must prove that his attorney's representation "fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quotation omitted).

Here, McGinnis fails to establish that his attorney's performance fell below an objective standard of reasonableness. First, McGinnis was not entitled to an accomplice-corroboration instruction, so his counsel was not ineffective for not requesting the instruction. Second, McGinnis fails to identify the state's "overwhelming" use of leading questions. *See Wembley*, 712 N.W.2d at 795 (stating that "[a]n assignment of error in a brief based on 'mere assertion' and not supported by argument or authority is waived"). Moreover, an appellate court awards great deference to an attorney's trial tactics. *See State v. Rhodes*, 657 N.W.2d 823, 845 (Minn. 2003); *see also Leake v. State*, 737 N.W.2d 531, 542 (Minn. 2007) ("Decisions about objections at trial are matters of trial strategy."). Finally, McGinnis did not receive ineffective assistance of counsel when his attorney failed to object to two comments during the state's closing argument. *See Leake*, 737 N.W.2d at 542.

**Affirmed.**