*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-0736

State of Minnesota,
Respondent,

vs.

Dennis John Edmondson,
Appellant.

**Filed March 4, 2024**
**Affirmed**
**Reyes, Judge**

Ramsey County District Court
File No. 62-CR-21-4933

Keith Ellison, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Chang Y. Lau, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Larson, Judge; and Florey, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**REYES**, Judge

Appellant challenges his sentence following his conviction of second-degree unintentional murder, arguing that the district court abused its discretion by determining that appellant's imperfect self-defense argument did not warrant a downward durational departure. We affirm.

## FACTS

The following facts are undisputed. On August 29, 2021, appellant Dennis John Edmondson visited a gas station in St. Paul that D.K. and her friend M.S. were also visiting. While there, M.S. approached appellant and tried to sell him clothing. D.K. reported that appellant became upset, aggressive, and held a gun inside his pocket and stated, "I will shoot you," before getting into a black car that then left the gas station.

D.K. and M.S. followed the car from the gas station and observed appellant holding a black handgun outside the front passenger-side window. D.K. saw that a red Jeep had pulled up next to the black car at an intersection and then heard gunshots from different firearms, saw three flashes inside the Jeep, and witnessed the Jeep crash. D.K. and M.S. pulled over to help the Jeep's five juvenile occupants. The driver of the Jeep, L.B.-L., had been shot in the head and later died after paramedics transported him to a hospital. The black car drove away.

Law enforcement spoke with the other Jeep occupants, including J.W.B., J.M.B., I.C., and T.T., and learned that the Jeep had been at the gas station before the shooting. None of the Jeep's occupants reported any interaction with appellant while at the gas

station. J.W.B. reported that a black car had followed them from the gas station and that he saw an older black male, later identified as appellant, pointing a gun out the passenger-side car window and at the Jeep. J.W.B. told the other Jeep occupants what he saw before appellant started to shoot at the Jeep. J.W.B. also reported that, after the Jeep crashed, D.K. and M.S. stopped to help them and told them that appellant had also pointed a gun at them. J.M.B., I.C., and T.T.'s statements to law enforcement corroborated much of J.W.B.'s rendition of the events.

The next day, law enforcement stopped and detained K.W., who was in a relationship with appellant and driving the car when appellant shot L.B.-L. K.W. reported to them that she, appellant, and appellant's six-year-old son were at the gas station when appellant grabbed a handgun from inside the car and argued with a woman who was trying to sell him clothes, but that appellant did not argue with the Jeep's occupants. K.W. reported that, after both vehicles left the gas station, the Jeep "sped past them," was "driving crazy," and that the Jeep driver spat out the window at their car while they were at a stoplight. Appellant asked the Jeep driver "what he was doing," and the Jeep "took off." At the next stoplight, the Jeep passengers kept looking over at the car and appellant yelled at them, "What the f--k are you looking at?" K.W. stated that she heard gunshots after the Jeep's door began to open, that "[appellant] shot first because [we] thought the people in the Jeep were going to shoot at [us]," and that she also heard gunshots from the Jeep.

Later that day, officers arrested appellant and recovered a handgun. Appellant's rendition of the incident was similar to K.W.'s except that he stated that the woman who

3

approached him at the gas station was "foaming at the mouth," and that, after leaving the gas station, he noticed that the woman was in a Jeep that he thought was trying to catch up to their car. Appellant said that he shot at the Jeep only after noticing a passenger open the Jeep's door and saw a firearm and that his intention was not to kill anyone but simply to protect his family.

On September 1, 2021, respondent State of Minnesota charged appellant with three counts of second-degree murder under Minn. Stat. § 609.19, subds. 1(1), 1(2), and 2(1) (2020) (counts I, I, and III), and one count of ineligible person in possession of a firearm under Minn. Stat. § 624.713, subd. 2(b) (2020) (count IV).[1] In November 2022, appellant pleaded guilty to count III in exchange for the state dismissing the remaining charges. The parties agreed that appellant's sentencing-guidelines range was between 204 and 288 months and that the district court could sentence appellant to serve between 180 to 240 months in prison at its discretion. The district court deferred accepting appellant's plea so that it could "review the [presentence investigation (PSI) report] and listen to all of the arguments of counsel before making a final decision."

In January 2023, appellant filed a motion for a downward durational departure to a 180-month sentence, arguing that his conduct amounted to imperfect self-defense or imperfect defense of others.

At appellant's sentencing hearing, the district court began by summarizing the terms of the parties' plea agreement, then acknowledged that it had received appellant's departure

---

[1] Appellant was ineligible to possess a firearm or ammunition due to four prior felony convictions.

motion and that it had "reviewed the [PSI] and [was] prepared to impose sentence." The district court heard L.B.-L.'s mother's victim-impact statement and then gave appellant an opportunity to speak. Appellant expressed that he was "deeply sorry," that his intent was to protect his family, and that he was going to learn from his mistakes. The state opposed appellant's departure motion and requested that the district court impose a presumptive sentence of 240 months, consistent with the PSI report's recommendation. The district court then accepted appellant's guilty plea and adjudicated him guilty of count III. After discussing appellant's departure motion, the district court denied the motion and sentenced appellant to a presumptive 240-month imprisonment with credit for 535 days served.

This appeal follows.

## DECISION

Appellant argues that the district court abused its discretion by denying his motion for a downward durational departure and by determining that (1) appellant was the initial aggressor in the incident and (2) there existed a reasonable possibility of retreat to avoid danger. We are not persuaded.

The Minnesota Sentencing Guidelines establish presumptive sentences for felony offenses. Minn. Stat. § 244.09, subd. 5 (2022). Absent "identifiable, substantial, and compelling circumstances," a district court must order the presumptive sentence provided in the sentencing guidelines. Minn. Sent'g Guidelines 2.D.1 (2020); *see also State v. Pegel*, 795 N.W.2d 251, 253 (Minn. App. 2011). "Substantial and compelling circumstances" may support a durational departure if the defendant's conduct is significantly more or less serious than the typical offense. *State v. Abrahamson*, 758 N.W.2d 332, 337-38 (Minn.

5

App. 2008), *rev. denied* (Minn. Mar. 31, 2009).  "A durational departure must be based on factors that reflect the seriousness of the *offense*, not the characteristics of the offender." *State v. Solberg*, 882 N.W.2d 618, 623 (Minn. 2016).

If substantial and compelling circumstances exist, "[t]he decision whether to depart from [the] sentencing guidelines rests within the discretion of the [district] court and will not be disturbed absent a clear abuse of that discretion."  *State v. Oberg*, 627 N.W.2d 721, 724 (Minn. App. 2001), *rev. denied* (Minn. Aug. 22, 2001).  "A district court abuses its discretion when its decision is based on an erroneous view of the law" or when its factual findings are clearly erroneous because they are not supported by the record.  *State v. Guzman*, 892 N.W.2d 801, 810 (Minn. 2017).  An appellate court cannot interfere with a district court's exercise of discretion "as long as the record shows the [district] court carefully evaluated all the testimony and information presented before making a determination."  *Pegel*, 795 N.W.2d at 255 (quotation omitted).  Only in rare cases will an appellate court reverse a district court's imposition of a presumptive sentence.  *State v. Olson*, 765 N.W.2d 662, 664 (Minn. App. 2009).

The sentencing guidelines establish a "nonexclusive list of factors that may be used as reasons for departure."  Minn. Sent'g Guidelines 2.D.3 (2020).  A mitigating factor may include that "[o]ther substantial grounds exist that tend to excuse or mitigate the offender's culpability, although not amounting to a defense."  *Id.*, 2.D.3.a.(5).  Although Minnesota does not recognize imperfect self-defense, *State v. Thompson*, 544 N.W.2d 8, 13 (Minn. 1996), it can be considered as a mitigating factor.  *See State v. Fleming*, 869 N.W.2d 319, 329 (Minn. App. 2015) (affirming district court's upward durational sentencing departure

6

and acknowledging that district court considered mitigating factors that included appellant's imperfect self-defense claim), *aff'd*, 883 N.W.2d 790 (Minn. 2016). District courts may also consider aggravating factors. Minn. Sent'g Guidelines 2.D.3.b.

Imperfect self-defense may apply to cases when "one, but not all, of the elements of self-defense have been met." *Thompson*, 544 N.W.2d at 12. To establish a claim of self-defense, a defendant must show

> (1) the absence of aggression or provocation on the part of the defendant; (2) the defendant's actual and honest belief that he was in imminent danger of death or great bodily harm; (3) the existence of reasonable grounds for that belief; and (4) the absence of a reasonable possibility of retreat to avoid the danger.

*State v. Radke*, 821 N.W.2d 316, 324 (Minn. 2012).

Appellant argues that the district court abused its discretion by "misappl[ying] the law on self-defense" and by making clearly erroneous findings because the record does not support that he was the initial aggressor in the shooting or that the events leading up to it were precipitated by his threatening M.S. with a gun. During the sentencing hearing, the district court began by acknowledging that it had the discretion to consider imperfect self-defense to mitigate appellant's sentence, but that it could also consider aggravating factors. The district court found that two aggravating factors offset appellant's imperfect self-defense argument: (1) that the PSI report supported that appellant "brandished the gun at the gas station, arguably fanning flames of anger before [appellant] even left," which created "a very plausible argument that [appellant was] the main instigator" and (2) that appellant's prior felony convictions precluded him from possessing a gun.

7

The record and caselaw support the district court's determination. First, the district court appropriately stated the law on imperfect self-defense and its discretion to consider mitigating and aggravating factors. Second, the record is clear that appellant was ineligible to possess a gun. Simply put, if appellant had not had a gun, he could not have shot L.B.-L. Third, the record supports the district court's finding that appellant was the initial aggressor. The PSI report provides that the gas station surveillance video showed that appellant retrieved a handgun and placed it in his waistband after speaking with M.S. D.K. stated that appellant was upset and aggressive and stated "I will shoot you" while holding a gun inside his pocket. D.K. and J.W.B. reported to law enforcement that appellant held a black handgun outside the car's passenger-side window before the shooting. K.W.'s report supports that appellant initiated verbal interactions with the Jeep's occupants twice before shooting L.B.-L., and all parties agreed that appellant fired the first shot. Moreover, appellate courts generally uphold a district court's decision to deny a downward departure when a self-defense claim is unclear. *State v. McKissic*, 415 N.W.2d 341, 345-46 (Minn. App. 1987); *State v. King*, 367 N.W.2d 599, 603 (Minn. App. 1985).

Appellant also argues that the district court "erred by determining that there existed a reasonable possibility of retreat to avoid danger to [appellant] and his family" because he could not avoid the risk of hitting another vehicle or being shot by attempting to leave the scene. However, the record supports that the district court denied appellant's departure motion based on reasons other than appellant's failure to retreat. Although the district court did mention appellant's duty to retreat during the sentencing hearing, the record supports

8

that it was in reference to the illegality of appellant having a gun and that, without the gun, retreat would have been appellant's only option.

Further, this court has stated that "the mere fact that a mitigating factor is present in a particular case does not obligate the [district] court to place defendant on probation or impose a shorter term than the presumptive term." *Pegel*, 795 N.W.2d at 253-54 (quotation omitted). Here, the record supports that, even if appellant's claim for imperfect self-defense was a substantial and compelling mitigating circumstance, the district court properly exercised its discretion by denying appellant's departure motion. The district court carefully considered the law, the relevant evidence presented, the reasons for and against departure, and ultimately determined that a downward durational departure was not justified. *Pegel*, 795 N.W.2d at 255; *State v. Van Ruler*, 378 N.W.2d 77, 80-81 (Minn. App. 1985). We discern no abuse of discretion by the district court.

**Affirmed.**